Morse et al. *v.* Slason et al.

STEPHEN MORSE, ALLEN VAIL AND MICAH VAIL *v.* FRANCIS
SLASON, ALBERT LANGDON AND WILLIAM C. DENISON.

IN CHANCERY.

[Same case, 13 Vt. 296.]

Where a creditor's bill was brought to compel the application of certain prop-
erty, in the hands of the defendants, as part of the estate of an intestate
debtor for the payment of debts generally, and the defendants, by their
answers, claimed that the property was transferred to them by the debtor
in his life time in part payment of certain claims which they held against
him, and that, in procuring their claims allowed by the commissioners
upon said estate, they had credited the said property and allowed for the
same at a certain price, and the case was referred to a master, under a man-
date from the chancellor that he ascertain and report the actual cash value
of the property, it was held that the master was justified in treating the
answers as *evidence* merely, and not conclusive as to the true value, and in
receiving and weighing other evidence in ascertaining such value.

So, as to the quantity of the property, it was held that the answers were evi-
dence of the strongest character against the defendants, but still not con-
clusive.

The defendants, in such case, become accounting parties, and their evidence
may properly be received by the master in reference to the true value,
quantity and condition of the property.

Where the object of the bill was merely to have the property brought into a
course of administration as the estate of the debtor, and the report did not
show that the defendants had disposed of the property and received pay-
ment therefor, it was held that the defendants could not be properly
charged with interest upon the value of such property.

And, where two of the defendants were administrators upon the estate of the
debtor, and the third defendant was brought into the suit by reason of his
alledged claim upon the property, and the court of chancery vacated his
claim, and ordered the property to be brought into the administration, as
part of the estate, by the administrators, it was held no objection to the de-
cree, that by it the third defendant was dismissed from the suit without cost,
—the whole object of the bill being attained by such course.

Where a draft for money came into the hands of the defendants at the same
time and for the same purpose as the other property, and they had obtained
the money upon it, it was held no objection to the master's proceedings,

that he charged the defendants with the sum so received, notwithstanding the mandate from the chancellor to him, in terms, required him to take an account of the "personal property" which came into the hands of the defendants, without any further descriptive words.

APPEAL from the court of chancery. The bill, in this case, was brought by the orators in behalf of themselves and the other creditors of Hoit Guernsey, deceased, alledging, among other things, that a large amount of the personal property of the said Guernsey had come into the possession of the defendants, Slason and Langdon, at or about the time of his decease, and that the defendants, Slason and Denison, were administrators upon the estate of the said Guernsey, and that said property had never been inventoried by the administrators, and praying that it might be decreed to be assets in their hands for the payment of the debts of the said deceased.

The case was before the supreme court at their February term, 1841, on an appeal from a decree of the court of chancery dismissing the orators' bill. That court then reversed the decree, and held that Slason must be required to charge himself with the value of the property, and remanded the case to the court of chancery with directions to refer it to a master to ascertain that value. The decision then given and the allegations and statements of the bill and answers are fully reported in Vol. 13 of the Vermont Reports, page 296.

The defendants, Slason and Langdon, in their answers, admitted that they had received the property in question, and also a certain draft, drawn by Guernsey on Arnold, Leggett & Lapham, for $1839,97,—the proceeds of which they had received,—and claimed that the property was, by the said Guernsey, in his lifetime, sold and delivered to them, to be applied as payment for certain liabilities to a large amount that they were under for him; and that the draft was delivered to them at the same time, and for the same purpose; and that, when those liabilities were presented by them for allowance by the commissioners on the estate of Guernsey, they made application of the property so received by them, at prices which they specially set forth, amounting in the whole to $16,171,06, and which they averred were large prices for the property. The defendant, Denison had received no portion of the property, and was brought into the suit as one of the administrators merely.

Morse et al. v. Slason et al.

The court of chancery, in pursuance of the directions of the supreme court, referred the case to a master in chancery, with instructions to "take an account of all the personal property which came to the hands of the said Slason and Langdon by virtue of the contract set forth in their several answers, as being purchased of said Guernsey in his lifetime, the amount of said account to be stated at the fair cash value of said property at the time it came to the possession of the said defendants, Slason and Langdon."

The master reported, that, on the hearing before him, the defendant Slason was offered as a witness on the part of the defendants, to show the quality and value of the property in question; that the orators objected to his admission, both as being a party to the suit, and on the ground that the defendants had, in their answers, set forth the value which they allowed for the property, in applying the same upon their claims against the estate of Guernsey, and that their answers were conclusive upon them in this respect; that the objection was overruled by the master, and Slason admitted to testify; and that, if, in the opinion of the court, the answers were conclusive upon the defendants, as claimed by the orators, then the sum to be accounted for was, as stated therein, $16,171,06; but that, if the answers were not thus conclusive upon them, and the value of the property was open to inquiry and proof, he found the value of the property to be $14,759,57. The auditor further reported, that, in making said sum of $14,759,57, he included the draft drawn on Arnold, Leggett & Lapham, although the defendants objected thereto.

Exceptions were taken by the orators to the master's report, but the court of chancery accepted it, and decreed that the value of the property received by the said Slason and Langdon be taken to be, as found by the report, $14,759,57; that they be allowed to retain an amount thereof sufficient to pay such a proportion of the amount which they had credited the estate of said Guernsey for the same, in the allowance of their claims before the commissoners upon said estate, as would make them equal to other creditors on the final settlement of the estate; and that, for the balance of the said sum, the said Slason credit the estate of the said Guernsey in his administration account, to be rendered before the probate court, as so much money belonging to the estate, received by him personally; and not

to be entered in the joint administration account of the said Slason and Denison; and that the said Langdon and Denison be dismissed without costs.

And now the case came on again for a hearing on objections to the proceedings and decisions of the master, and the decree of the court of chancery.

*J. Clark* and *S. H. & E. F. Hodges* for orators.

I.   The master's report requires correction in several particulars.

1.   He has charged the defendant Slason with a less *quantity* of property, than it was admitted by the answer had been received.

2.   He has found the *value* of the property to be less than the answer admitted it was. The testimony, upon which this part of the report is founded, should not have been heard. The defendants were conclusively bound by the admissions contained in their answers, which were made under the solemnity of an oath, and with ample opportunity for mature consideration. The practice of allowing defendants to modify their answers, after discovering where their case is defective, is so obviously dangerous, that it is not permitted in practice. This attempt is precisely similar in character, and equally objectionable. The testimony, moreover, operated as a surprise upon the orators, who were warranted in relying upon the answers, and whose vigilance was thereby lulled. Gresley's Eq. Ev. 165, 169. Ib. 10, citing *E. India Co.* v. *Keightly*, 4 Mad. 16, and *Roberts* v. *Roberts,* Dick. 573.    *Sheffield* v. *Bucks (Dutch. of,)* 1 Atk. 628.

II.   The decree ought also to have directed that the defendant Slason should charge himself, in his administration account, with interest upon the property received, as well as with the principal.

III.   The defendant Langdon should have been made liable under the decree for the property received by him and Slason.

IV.   The defendants are properly charged with the proceeds of the draft on Arnold, Leggett and Lapham. It comes clearly within the terms of the decision of the supreme court reversing the original decree in this case; and the question of charging it was peculiarly within the province of the master.

Morse et al. *v.* Slason et al.

*E. L. Ormsbee* for defendants.

1. The master was correct in admitting testimony to show what was the real cash value of the articles to be accounted for by the defendants under the decree. The answers do not profess to contain the value in the opinion of the defendants. They merely relate the prices allowed in fixing the sums to be credited on their claims. In fixing these prices the defendants had every inducement, not merely to fix a price as large as the actual cash value, but one so large as to be beyond question, and satisfactory to all persons interested. On the other hand, as their claims were much larger than the amount of personal property they received, they had no motive, or interest, to scrutinize closely the price.

2. The defendants, under the decretal order of the court, must be considered as accounting parties, and the defendant Slason was properly examined before the master.

3. The master erred in taking into the account the cash credited as received of Arnold, Leggett and Lapham. The case was referred to him to take an account of all the "personal property" which the defendants claimed to have purchased of Guernsey in his life time. Nothing appears to show but what this draft may have been drawn in pursuance of an entirely distinct contract from the one disclosed in the answers,—and nothing could be expected to appear, for the matter was not inquired after in the bill. It is merely mentioned in the answers, in setting out the credits which they allowed in presenting their claims before the commissioners.

The opinion of the court was delivered by

ROYCE, J. Most of the questions presented arise on exceptions to the master's report, which were overruled by the chancellor. The two first exceptions proceed upon the ground that the defendants were bound to account for the property in question, at the respective prices stated in their answers ; and hence that the master should have taken the answers as conclusive evidence of the value. But the answers do not directly alledge the value of any of the articles ; it is only stated that they were allowed, at certain prices, to the estate of Guernsey. Those prices are not even stated to have been fixed by any contract. And, as the mandate of this court had directed a reference, to ascertain the actual cash value of the prop-

erty, we think the answers were properly treated by the master as evidence *merely*, and not as being conclusive of the true value. Other evidence on the subject was therefore admissible, and the testimony of the defendant Slason was correctly received, as that of an accounting party.

It was next objected that no interest was allowed upon the value of the property. This objection would seem to be answered by stating the scope and object of the orators' bill. It sought to vacate the pretended conveyance from Guernsey to the defendants, and to have the property brought into a course of administration as the estate of Guernsey, for the benefit of his general creditors. That object is effected by holding the defendant Slason, one of the administrators, to account for it, in the court of probate, at its cash value. This is all, and even more than could well have been expected, had this property been originally inventoried as part of the estate. Besides, the report does not show a disposition of the property by the defendants, and the receipt of payment for it. And, in the absence of such showing, we cannot treat the original transaction as a sale by Guernsey, for the purpose of putting the value upon interest, and not as a sale for the purpose of transferring the property.

Another exception was founded on certain alledged errors of the master in computing the quantity, and consequent value, of various portions of the property. This exception also assumes the conclusiveness of the answers. And it is clear that, in relation to numbers and quantities, the answers should be regarded as evidence of the strongest character against the defendants. But the master, being required to ascertain and report the truth, was still at liberty, as we think, to treat the answers as evidence merely, and not as irrefragable proof. Mistakes in the answers might therefore be shown, but only by evidence yet more decisive than the defendants' admissions on oath.

The fifth and last exception to the report was rendered unimportant by the decision of the chancellor, since the larger sum reported was not taken as the basis of the decree.

The dismissal of the defendant Langdon is likewise urged as an error in the decree. In considering this objection, the object of the bill is to be borne in mind, as also the fact that Langdon was not

Morse et al. *v.* Slason et al.

an administrator upon the estate of Guernsey.   Whenever the property in dispute should be transferred to the administrators, to be proceeded with as part of that estate, the purpose of the bill, so far as this defendant was concerned, would be accomplished.   But the decision of this court has already dissolved the title of Langdon to the property, and the subsequent decree of the chancellor has directed it to be carried into the estate of Guernsey by Slason, the administrator.   Langdon is, therefore, apparently discharged from all further connection with the subject matter of the suit.  This is obviously true, unless some coercion upon him should be needed, to enable Slason to obey the decree.   And, as no such necessity appears, we consider that Langdon was properly dismissed.

An objection is raised by the defendants, because the draft on Leggett and others was included in the report.   That draft was not specially mentioned in the bill, but was mentioned in the answers ; and we think it was fairly embraced within the mandate from this court.   The term "personal property" is sufficiently comprehensive to include it.   And it seems to have been created and passed into the hands of the defendants at the same time, and with the same general purpose and understanding, as the other personal property. Had it been drawn in favor of some creditor of Guernsey, to whom the defendants were liable as sureties, it might, perhaps, have been distinguished from the other property, and treated as a payment made by Guernsey to such creditor; but being drawn in favor of one of the defendants, and having, like the other property, entered into their account with Guernsey, it was rightfully included in the report and decree.                    Decree of the chancellor affirmed.