Danforth *v.* Smith.

RUTH DANFORTH *v.* THEODORE W. SMITH.

[IN CHANCERY.]

*General prayer for relief. Assignment of dower. Jurisdiction of probate court. Apportionment of incumbrance. When bill may be brought. Agreement to vary rule of apportionment. Repairs by dowress. Interest upon incumbrance. Repeal of statute.*

The general prayer for relief, in a bill in chancery, is sufficient to obtain all relief, consistent with the general frame of the bill.

The probate court have exclusive jurisdiction of the assignment of dower; and if the dowress claim to have a special rule of apportionment, the probate court can alone establish such rule in her favor. But if the probate court assign dower, generally, in an equity of redemption, without determining the proportion, which the widow shall pay towards the incumbrance, it is equivalent to saying, that it shall be in proportion to her estate; and the court of chancery have jurisdiction, upon a bill brought by the dowress for that purpose, to determine the proportion which he should pay, upon the general rule of equity in such cases, except so far as the parties may have varied that rule, by an agreement executed at the time.

The mere fact, that the estate has been purchased subject to the incumbrance and the widow's dower, is not sufficient to raise any special rule of apportionment, varying from the ordinary rule in equity.

Danforth *v.* Smith.

The dowress may bring a bill in chancery, for the apportionment of the incumbrance, whenever the incumbrance becomes due, without first paying it.

The general rule of equity is, that all the estates concerned, whether defined by quantity of interest and duration, or by extent of territory, shall contribute towards the incumbrance, according to their relative value when the contribution becomes obligatory, which is, when the debt falls due.

According to this rule, when a widow is endowed in an equity of redemption, one third of the incumbrance should be placed upon the land covered by the dower and the remaining two thirds upon the residue of the land covered by the incumbrance.

But it is competent for the dowress, the mortgagee and the one who purchases the equity of redemption subject to the imcumbrance and the dower, to agree upon a different mode of apportionment; and if they agree, although by parol, that all of the incumbrance, except a certain part, should be paid from that portion of the mortgaged premises not covered by the dower, this agreement, when executed, will be irrevocable, and the court of chancery will have regard to it, in apportioning the residue of the incumbrance between the dowress and the owner of the reversion.

In apportioning an incumbrance between a dowress and the owner of the reversion, it is not competent for the court of chancery to determine any sum, which shall be expended by the dowress, each year, for repairs.

There is no rule, in this state, requiring the dowress of an equity of redemption to keep down the interest upon the incumbrance.

The repeal of a statute, prescribing a particular mode of trial, will *not* operate to annul proceedings had under the statute in cases pending at the time of the repeal.

APPEAL from the court of chancery. It was alleged in the bill, that Jonathan R. Danforth, the husband of the oratrix, died, February 5, 1847, seized of certain land in St. Albans, upon which there was a tavern house, and of a farm in Fairfax and Georgia, which real estate was subject to a mortgage to N. W. Kingman and Hiram B. Sowles, to secure about the sum of $2700,00, and to a mortgage to Hiram B. Sowles, William O. Gadcomb, Victor Atwood and the defendant to secure about the sum of $1234,00, and to a mortgage to Jonathan Danforth, to secure the payment of certain specific articles, yearly, intended for the support of .the said Jonathan, the con-

ditions of which had been performed to January 1, 1845, and to a lease, which would expire April 1, 1848; that letters of administration were granted to the oratrix, and commissioners appointed, and claims allowed, and it appeared, that the personal estate was insufficient to pay the debts allowed, by the sum of $800,00, and the probate court granted license to the oratrix to sell so much of the real estate, as would be sufficient to raise that sum; that previous to this license being granted, the land in St. Albans, with the tavern house upon it and all appurtenances, had been, by the probate court, in due form of law, assigned to the oratrix, as dower, as being one third part of the real estate of the intestate,—all of his real estate being incumbered by the mortgages before mentioned; that the oratrix, in pursuance of the license of the probate court, advertised for sale all of the real estate of the intestate, subject to the mortgages before mentioned and to the dower of the oratrix, and subsequently sold and conveyed the same, with the reversion of the widow's dower, and subject to all the incumbrances above named, and subject to the dower, to the defendant, for the sum of six dollars; that the defendant, in pursuance of an agreement previously made, immediately conveyed the farm in Fairfax and Georgia to Luther B. Hunt, who was to pay and cause to be discharged all the incumbrances upon the tavern stand in St. Albans, except the mortgage to Sowles, Gadcomb, Atwood and the defendant, then amounting to $1308,74, and the dower of the oratrix, and Hunt soon after sold the farm to the town of St. Albans, and caused the incumbrances upon the tavern stand to be discharged, so far as he had agreed to do so; that Sowles, Atwood and the defendant had since assigned to Gadcomb all their interest in the mortgage to them,—but, as the oratrix insisted, for the benefit of the defendant alone, or for the joint benefit of the defendant and Gadcomb,—the defendant still continuing owner of the reversion of the dower; that Gadcomb brought a bill of foreclosure against the oratrix, as the owner of the life estate, and the defendant, as the owner of the reversion, and obtained a decree of the court of chancery, that $78,46, and the cost, taxed at $44,05, be paid by September 2, 1849, with interest from November 28, 1848, and that $74,03, with interest, be paid by December 1, 1849, and that $74,03, with interest, be paid by December 1, 1850, and that $1308,30, with interest, be paid by December 1, 1851, or the ora-

XXIII. 32

trix and defendant be foreclosed of all equity of redemption in the premises; and that the oratrix, March 20, 1849, believing that the defendant would be willing to allow the decree to become absolute, paid the two first instalments, with the cost and interest, amounting to $200,27. And the oratrix prayed, that the defendant might be decreed to repay to her the sum so paid by her, together with all sums which she should thereafter pay for the redemption of the premises, and that he might be decreed to pay all sums remaining due to Gadcomb upon the mortgage, or, in default thereof, and upon the payment thereof by the oratrix, be decreed to convey his reversionary interest in the premises to the oratrix, and for general relief.

The defendant answered, admitting the allegations in the bill as to the decease of Jonathan R. Danforth, and the existence of the incumbrances upon the real estate, and the grant of administration to the oratrix, and the assignment to her of the premises in St. Albans, as dower, and the sale of the premises to the defendant, but insisting, that the oratrix was bound to pay her proportion of the mortgages, to be determined by the probate court, and denying, that he purchased subject to the whole amount of the mortgages, but only subject to the balance, after the oratrix had paid her share, and denying, that he made any agreement at the time of purchasing the equity of redemption, except such as resulted from the sale and the deed executed at the time.

The answer was traversed, and a trial had in the court of chancery, September Term, 1850, before ROYCE, Chancellor. And the chancellor certified the facts found by him, and his decision of the questions of law, pursuant to the requirements of the statute of November 13, 1849.*

The various conveyances by mortgage, lease, &c., and the assignment of the tavern stand in St. Albans to the oratrix, as dower, were

---

* By which it was enacted, that, upon the trial of all cases in chancery, the witnesses, with certain specified exceptions, should be examined before the chancellor in the same manner, in which witnesses are examined in trials at law; that the chancellor should file with the clerk a report of all the facts found by him, and of his decision of the questions of law; that an appeal might be taken from the decree of the chancellor; and that the supreme court should hear and determine such appeal upon the facts and questions contained in such report. Acts of 1849, p. 5.

found as stated in the bill and admitted in the answer. It appeared, that all the incumbrances, which were concentrated upon the farm in Georgia and Fairfax by agreement of the mortgage creditors, at the time of the sale of the real estate by the oratrix, November 30, 1847, amounted to about the sum of $3000,00, which was about the value of the farm, and that, by that arrangement, the mortgage held by Gadcomb, and that alone, was left to rest upon the premises assigned to the oratrix as dower,—mutual releases being executed among said creditors, to effect that object. To this arrangement the defendant and also Luther B. Hunt, who acted as the legal adviser of the oratrix, and who was to purchase the farm and convey it to the town of St. Albans, were privy and consenting. It also appeared, that in assigning dower to the oratrix, the committee appraised all the real estate, consisting of the farm and tavern stand, as if it were unincumbered, and assigned to her the tavern stand, as being one third in value of all the real estate. It also appeared, that when the real estate was exposed to sale, by the oratrix, November 30, 1847, the description of the estate and the several incumbrances upon it, including the dower of the oratrix in the tavern stand, were fully proclaimed and made known to the defendant and the other bidders present, and that they were stated in the advertisements of the sale. The defendant bid off and purchased, at the sale, all the interest, which the estate of the intestate had in the real estate, for the sum of six dollars; and he received from the oratrix, as administratrix, a deed of the premises, specifying all the incumbrances, and the dower, and purporting to convey only the interest in the estate, which the intestate had at the time of his decease. The oratrix offered to prove, by witnesses, that when the defendant so bid off the estate, he agreed to pay all the mortgages, so as to leave the dower unincumbered; but this evidence was objected to, and was excluded by the court. Immediately after the defendant bid off the estate and received the deed from the oratrix, he made sale of the farm in Georgia and Fairfax, by deed of quitclaim, to Luther B. Hunt, and Hunt conveyed the same to the town of St. Albans; by which means all the incumbrances upon it were satisfied and extinguished. The defendant paid nothing, otherwise than by executing this quitclaim deed, towards the satisfaction of said incumbrances, nor did he receive any other consideration for executing the deed, than such as resulted from the transaction, as above detailed.

The defendant urged at the hearing, as he had claimed by his answer, that the oratrix should be decreed to pay in proportion to her share towards satisfying all the incumbrances when her dower was assigned; and that, since all these had been extinguished except the mortgage held by Gadcomb, she ought now to pay as much towards the redemption of that mortgage, as would have been the amount of her liability in respect to all the incumbrances. But the court decided, that the relative contributions of the oratrix and the defendant, in redeeming this last mortgage, must be settled with reference to that incumbrance only, and as if no other had existed; and a reference was accordingly directed and had, during the term at which the hearing was had, to ascertain what would be the respective values of the life estate of the oratrix and the reversionary estate of the defendant in the tavern stand, if it were not incumbered in favor of any third person. The commissioners reported, that they appraised the premises, as if they were free from mortgage, dower, or other incumbrance, and without regard to any improvements made upon them by the oratrix, at $2200,00, and that they estimated the life estate of the oratrix at $705,52, and the reversionary interest at $1494,48; that in estimating the value of the life estate, they referred to the Carlisle Table, used by life insurance companies, which would allow the oratrix the expectation of 21·11-100 years; and that they called the use of the premises $132,00 a year during that whole time, and allowed the oratrix $100,00 per year, to be expended in repairs in order that the use of the premises might remain worth $132,00 a year, during the term of 21·11-100 years.

This report was accepted by the court; and it was decreed, that the oratrix and defendant were bound to contribute towards the redemption of the mortgage held by Gadcomb in the following proportions, viz.:—In payment of the first instalment due by the decree in favor of Gadcomb, which included his bill of costs, as taxed, the oratrix should have paid $39,29, and interest from the date of the decree, and the defendant should have paid $83,22, with interest:—In payment of the second instalment, the oratrix should have paid $23,74, with interest, and the defendant should have paid $50,29, with interest:—Upon the third instalment the oratrix and defendant should have paid the same sums, respectively, as towards the second instalment:—And upon the last instalment the oratrix was bound to

Danforth *v.* Smith.

pay $419,56, and the defendant $888,74, with interest according to
the decree.    And it appearing that the oratrix, in order to save her
estate, had paid the several sums, which the defendant should have
paid towards the three first instalments, it was farther decreed, that
the defendant should pay these sums, with interest, in addition to the
proportion to be paid by him towards the last instalment, and the
same amount should be deducted from the proportion to be paid by
the oratrix towards the last instalment.    And it was farther decreed,
that if either party, in order to save his or her estate, should be com-
pelled to pay the whole or any portion of what the other party was
thus decreed to pay, the party so failing to pay his or her share
should, within thirty days after such payment, refund and pay to the
party, so making such payment, whatever sum he or she should be
so compelled to pay for the party so in default, with interest thereon;
and that, in default thereof, the party so in default should be fore-
closed, in favor of the other party, of all estate and interest in the
mortgaged premises.    It was also decreed, that the costs of this suit
should be borne and paid by the parties in proportion to the value
of their respective interests in the premises, as found and reported
by the commissioners.    And it was also decreed, that the oratrix,
from time to time, as occasion should require, should faithfully ex-
pend, in repairs upon the premises, sums equal to $100 per year
during her life estate, including insurance against fire.    From this
decree the defendant appealed.

Previous to the case being heard, upon the appeal, in the supreme
court, the statute of 1849, under which the trial was had in the court
of chancery, was repealed; and the defendant moved, in the supreme
court, at the present term, that the case be remanded to the court
of chancery, with directions to take the evidence and have the same
to be sent to this court upon appeal.

This question was argued by counsel upon both sides, and the
opinion of the court was delivered, before the argument upon the
merits of the case, by

REDFIELD, J.  It has been urged, in argument, that the repeal of
the statute of 1849, requiring the testimony to be taken before the
chancellor, and that he report the facts, has the effect to abro-
gate all proceedings had under that act.    And this is argued from
a supposed analogy to the cases of penal statutes, libels for condem-

nation of property in the admiralty courts, and criminal prosecutions for crimes, or misdemeanors.

But the court have been unable to adopt the conclusion thus urged upon us. This is but the ordinary case of a statute affecting to some extent a pending proceeding. And in such cases it is generally supposed, that the intention is to preserve what has already been accomplished, and to unite the proceedings under the new statute and the former one, as well as we can, unless in cases where this is clearly impracticable.

It could hardly be supposed, that, after a case had been once tried at law and reviewed, if the statute prescribing the mode of trial should be repealed, and a new mode substituted, the former trial should go for nothing. In the case, supposed in argument, of a report of auditors, in an action upon book account, upon the testimony of the parties, under the existing laws, when no judgment had been entered up, and the statute should be repealed, allowing such testimony to be given, it could hardly be supposed, that the report should go for nothing and the case be re-committed.

Should this case be reversed on the hearing and remanded to the court of chancery for farther proceedings, we are not called upon to say, what might be the duty of the chancellor. He might have a discretion in regard to re-taking the testimony, and would, no doubt, be quite competent to dispose of the case in a proper mode.

We should always be glad to give the losing party an opportunity to be fully heard, and have no feeling, that a decision in favor of the motion would lead to any great embarrassment practically, as we suppose very few cases have been decided under the late statute. But our decision here must apply to other analogous cases, as well at law as in chancery; and we do not feel, that there is any just ground for the proceeding asked for in the motion, and it is denied.

At a subsequent day in the term the case was argued upon its merits.

*Stevens & Edson* for plaintiff.

Formerly it was the rule in equity, that the tenant for life should pay one third and the remainder-man two thirds of the incumbrance; but this rule has been long since repudiated by courts of chancery,

and the practice is now well settled, that the court, by their proper officers, shall ascertain the value of the respective interests. 1 Story's Eq., § 427. 1 Pow. on Mort., c. 11, pp. 311, 312. The decision of the commissioners, as to the value of the respective estates, cannot be here reviewed. The oratrix asks such decree, as she is in equity entitled to; and if this court, from the testimony, and the fact that the defendant purchased the equity of redemption as well as the reversion of the widow's dower for the nominal price of $6,00, find that it was the mutual understanding of the parties, that the defendant was to pay off the incumbrance, we ask, that the court should decree, that he pay the incumbrance set forth, or be forever foreclosed. The chancellor has decreed, that the oratrix shall expend $100,00 each year, during her life, in repairs. It is inequitable to compel the oratrix to pay an equitable share of the incumbrance, and, in addition, to expend so large a sum annually for the benefit of the reversion. By Rev. St., c. 51, § 14, the tenant in dower is compelled to keep the premises in repair; this, we think, is sufficient.

*A. O. Aldis* and *C. Beckwith* for defendant.

1. The oratrix is not entitled to the relief decreed by the chancellor. The relief decreed is not upon the case made by the bill. The bill does not seek contribution from the defendant. It does not set forth, that the lands mentioned therein are all the lands, that are bound to contribute. The facts set forth are to show the right of the oratrix to compel the payment of the whole amount of the Gadcomb mortgage. The rule of this court requires, not only that the facts set forth shall be sufficient for relief, but that they shall be introduced into the bill for the purpose of obtaining the relief sought. 1 Daniel's Ch. Pr. 431. 2 Ib. 419. *Williams* v. *Shaw*, 3 Cond. Eng. Ch. R. 351. *Stearns* v. *Gaphy*, Ib. The relief decreed ought not to have been granted under the general prayer. 1 Daniel's Ch. Pr. 492.

2. By the common law the oratrix had no right to dower in an equity of redemption. The right is given by statute, and she should have pursued the statute remedy, so far as to have had the proportion of the mortgage debt, which she was bound to pay, determined by the probate court, before she came to the court of chancery for

relief. By the common law, the oratrix was bound to keep down the interest; and she has done nothing more. Under the statute she was bound to pay her proportion, and until she has paid more than her proportion, she has no right to call on the defendant to contribute.

3. An agreement to pay off all the mortgages, so as to leave the dower of the oratrix free from incumbrance, cannot be implied from the terms of the defendant's purchase.

4. The decretal order of the chancellor, directing commissioners to ascertain the value of the life estate of the oratrix, was erroneous, because it directed them to find the value at the time the order was made, when it should have directed them to ascertain the value at the time the dower was assigned. The oratrix' expectation of life had diminished; consequently the value of her interest had decreased, and that of the defendant had increased.

5. The decree of the chancellor was founded upon the commissioners' report; and as it is apparent, that their report does injustice between the parties, the decree should be reversed. The property was appraised at $2200, and the use, deducting repairs, at $32,00 a year, which is about one and a half *per cent.* The court were not authorized to inquire respecting the necessary repairs *in futuro;* and they in effect exonerate the oratrix from her legal obligation, and throw the burden upon the defendant.

6. The decree was erroneous, in not directing the oratrix to pay her proportional share of all the mortgages upon all the land, of which her husband died seized. She elected to take one third of the land as her dower, and therefore she was bound to comply with the statute provisions, which required her to pay her share of the incumbrances. *Van Vronker* v. *Eastman,* 7 Met. 157. *Gibson* v. *Crehore,* 5 Pick. 146. *Swaine* v. *Previne,* 5 Johns. Ch. R. 482. 1 Pow. on Mort. 312, 314. 3 Ib. 1043, n. *Penryhn* v. *Hughes,* 5 Ves. 107. *Foster* v. *Hilliard,* 1 Story's R. 77. 1 Story's Eq., § 487.

The opinion of the court was delivered by

REDFIELD, J. The first question, made by the defendant's counsel in the present case, is, whether the bill is so framed, as to justify a decree in favor of the oratrix, of the character of that made by the court of chancery.

The bill is undoubtedly framed with a view to compel the defendant to pay the whole mortgage upon the premises, and such is the prayer of the bill.   But the facts upon which the chancellor decreed an apportionment of the mortgage between the oratrix and the defendant are substantially the same as those set forth in the bill.   Indeed the answer, in effect, admits all the facts, upon which the oratrix founds her claim to have a decree for the whole against the defendant.   I do not understand, that she, in her bill, founds her claim upon any express agreement of the defendant to pay the mortgage, but only, that he purchased subject to all the mortgages, and also to the widow's dower.   And all this is undeniably true, and is expressly stated in the oratrix's deed to the defendant and in her return to the probate court, as well as in her advertisements for the sale.   From all this the oratrix's solicitor, in framing the bill, saw fit to deduce the conclusion, that the defendant was bound to pay the whole mortgage, and has made a special prayer to that effect, and also the general prayer for such relief, as equity and good conscience shall require and the bill and proof justify.   This general prayer is all that is ever necessary in such a case, and has well been said, by eminent English chancellors, to be the best prayer in the world in such a case.   I do not myself comprehend, how the general prayer for relief can well fail of being adequate to obtain all relief consistent with the general frame of the bill.   The general frame of this bill contains all the facts in the case, and the very facts.   The only controversy is in regard to the obligations and duties resulting from the relative position of the parties, and the general prayer is undoubtedly sufficient.

Some question is made in the argument, whether it was not necessary to have the proportion of the mortgage, which the oratrix should pay, determined by the probate court, before she could go into a court of chancery to compel contribution.   This exception goes upon the ground, that, in this state, the probate court has the exclusive jurisdiction of the assignment of dower; and to this extent I should consider the counsel for the defendant well founded, although in England and many of the American states the law is clearly otherwise.   In England, if the dowress is compelled to go into chancery to obtain a discovery of the title of the husband, or the title deeds, in the hands of the heir, the court will retain jurisdiction of the case, until it is ended, either in denying dower, or in

XXIII.        33

making a full and final assignment of the dower.  *Swain* v. *Previne*, 5 Johns. Ch. R. 482, and cases cited.  But in this state courts of chancery ordinarily, in matters rightfully pertaining to the court of probate, only interfere in aid of its jurisdiction, in matters not within the power of that court, and only to that extent, then remitting the case to that court.  So that, if it were necessary to resort to a court of equity in this state to lay the foundation for the assignment of dower, I do not apprehend, that the court of equity would make the assignment, but they would remit the case to that court, to make the assignment.  This is the course, which always has been pursued in this state in analogous cases, by the reported determinations of this court.  *Morse* v. *Slason*, 13 Vt. 296, *S. C.*, 16 Vt. 319, and the reported case of the *Heirs of Adams* v. *Adams et al., Adm'rs*, 22 Vt. 50, show sufficiently the difference, between our practice and that of the English chancery courts, in taking matters wholly out of the hands of the ecclesiastical courts.

But it still remains to determine, whether the apportionment of this mortgage is any essential part of the assignment of dower.  If the dowress claimed to have a special rule of apportionment, we should be inclined to say, that the probate court have the only power, existing in our law, to establish any such rule in her favor.  But if they assign dower generally in an equity of redemption, without in any manner determining the proportion which the widow shall pay, in lessening the incumbrance, it is equivalent to saying, it shall be in proportion to her estate.  *Stevens* v. *Cooper*, 1 Johns. Ch. R. 425.  But as, in the present case, she cannot claim any advantage from any agreement made by the defendant at the time of sale, by parol, that he would pay the whole mortgage,—such contract, if any ever existed, of which we know nothing, being within the statute of frauds,—and as the mere fact, that the estate was purchased subject to the widow's dower, does not seem sufficient to raise any special rule of apportionment, this case must, we think, stand upon the general rule of equity in such cases, except so far as the parties may have varied it by a contract executed at the time,—and which would seem probably to have been ratified by the probate court, in the settlement of the oratrix's account; and, if not yet settled, she is liable, then, for any improper contract she may have made in the sale of the equity of redemption and the reversion of the widow's dower.

It was argued, that the bill was premature, as the oratrix has not

paid the incumbrances; and it was attempted to be likened to the case of one surety bringing a bill against his co-surety. But this is the case of joint principals, and each being surety for the others, also. And the surety may always bring a bill against his principals, to be released from the debt, as soon as it becomes due. He could not before the debt was due; for until that time he is in no danger. That is the case here; the debt is due and the estate in danger, and if the defendant is liable, the bill is well brought in this respect.

We come, then, to the general question of the defendant's liability to contribute to the payment of this mortgage. This is not strenuously questioned. The great controversy is as to the mode of computing the extent of the liability. The general rule of equity is, that all the estates concerned, whether defined by quantity of interest and duration, or by extent of territory, shall contribute according to their relative value at the time the contribution becomes obligatory, which is, when the debt falls due;—for until that, there is no power to compel payment, or contribution. If this mortgage did not become due for thirty years, or the interest, it might be very unequal for the dowress to throw the whole burden upon the owner of the reversion, or remainder;—but I do not see how, upon general principles of equity, such a result could be avoided.

The probate court might have some control over the matter, in making the assignment; but I do not see, how it could be done in a court of equity, before any thing was due. The tenant for life must be allowed quietly to enjoy the estate, I think. But when the debt becomes due, so that a right to have it apportioned accrues, the estates must bear the burden, according to their relative value at that time. The decree of the chancellor, having assumed a *medium* time in this respect, is correct enough for all practical purposes doubtless. The estate of the dowress, then, upon general principles, should share that proportion of all the mortgages upon both the tavern stand and the farm, which its value has to the whole value of the land. By this we understand, that, aside from any contract of the parties, or order of the probate court, as to the apportionment of these mortgages, one third should have been placed upon the widow's thirds, and two thirds upon the other portions.

But we think it was competent for the defendant and the widow and the mortgagees, who, at the time of the sale, together repre-

sented all parties in interest, to agree upon a different mode of apportionment ; and although by parol merely, and so of no validity, while it remained executory, yet, being executed, it would become binding and irrevocable. And such we understand to be the effect of the testimony and the finding of the chancellor,—that it was agreed, that all the incumbrances, except the present one of Mr. Gadcomb, should be put upon and paid by the farm ; and by this agreement, executed, the parties must now stand. It seems very probable, that at the time the defendant might have understood, that all the mortgages must be paid by him, or by the sale of the estate, before he could take any benefit of his estate ; but the chancellor found no such fact, and the proof would scarcely justify such a conclusion, perhaps. But to the extent of exonerating the tavern stand from all the mortgages except this, the entire testimony leaves no doubt. This, indeed, is not essentially different from the equitable apportionment, except that it puts something less than one third, between one and two hundred dollars, upon the tavern stand. It may be said the widow, or administratrix, had no authority to make a contract of this kind before the sale, to the disadvantage of the estate, and which must lessen the price of the sale. That may be true ; but of this the defendant cannot complain, if he bought with this expectation, as all the evidence shows very clearly that he did.

The administratrix may be liable for mal-administration, or to account for what she saved to herself by the contract of apportionment ; but this is a matter, which can only be set right on passing her account in the probate court. If that court ratify the sale upon these terms, it may be equivalent to a special decree determining this rate of apportionment of the mortgages, as to the widow's dower.

The only remaining question is as to the report of the commissioners and the detail of the decree. The interlocutory decree of reference to the commissioners seems correct ; but it seems to us, that their report is inconsistent with itself, to such an extent, that it ought to be re-committed. It is certain, that if the net yearly value of the estate is only $32, the estate is worth less than the mortgage. And whether the expectancy of the widow can be so much as they found it, and if it be so, whether the value of her estate would not be greater than what they found it, in proportion to the reversion, or

remainder, are matters which require, we think, to be examined. And we think, it is not competent for this court, or the court of chancery, in this case, to prescribe any rule of repairs for the estate. I understand the chancellor, that he had no intention to limit it upwards ;—we think, it should not be limited either way.

I do not think the American courts have generally required any tenant for life, certainly not a dowress, to keep down the interest. In the present case, according to the report of the commissioners, she being already bound to repair, that would be a most hopeless office. But tenant in tail was never bound to pay interest ; and I see no reason, why a dowress of an equity of redemption should. If she were endowed of land bearing an annual rent, like our public rights, she might be bound to pay that, in order to enjoy the estate. All the cases upon this subject, which have been named, go upon the ground, that she is bound to contribute to remove incumbrances, by way of mortgage, according to the present cash value of her estate, at the time of the apportionment. *Van Vronker v. Eastman,* 7 Met. 157, seems clearly to go upon the general ground stated above.

The case of *Foster* v. *Hilliard,* 1 Story's R. 77, assumes, upon great consideration, to settle the point, that, upon a sale of an estate, when there is a subsisting life interest and a remainder, the avails of the sale are to be divided between the tenant for life and the remainder-man, in proportion to the value of their respective interests. And it is expressly there laid down, that in such a case incumbrances upon the estate are to be borne in the same way. The sale in this case was by consent of all parties interested, but without determining any rate of distribution of the avails. And it is there held that, notwithstanding the death of the tenant for life after the sale, yet the rate of division is to be the relative value of their estate at the time of sale, calculating according to the usual table of life expectancy, according to Wigglesworth, or the Carlisle tables,—which latter seem to be, at present, more in use, perhaps.

The decree of the chancellor is reversed, and the case remanded, with instructions to pass a decree for the oratrix upon the general principles determined by the former decisions of the chancellor, correcting or verifying the report of the commissioners, omitting the provision as to repairs.