## TROWBRIDGE v. SYPHER ET AL.

1. **Dower:** IN MORTGAGED LANDS: PAYMENT OF MORTGAGE. The distributive share of a widow in the lands owned by her deceased husband, aside from the homestead, should bear its proportionate share of the mortgage indebtedness thereon, she having assented to such indebtedness by the execution of the mortgage, and her dower interest being limited by the statute to one-third in value. BECK, J., *dissenting*.

2. ——: TAXES. Taxes on the property of an estate may properly be ordered paid out of the proceeds of land sold by the administrator, before the widow's share is paid her.

### *Appeal from Polk Circuit Court.*

### THURSDAY, DECEMBER 16.

THE plaintiff is executor of the will of R. W. Sypher, deceased. As such executor he filed a petition in the Circuit Court of Polk county for an order for the sale of real estate to pay the debts of the estate. The defendant, Matilda K. Sypher, widow of R. W. Sypher, deceased, claims a distributive share of the real estate, and in case of sale a distributive share of the proceeds. The other defendants, heirs and devisees, and the plaintiff, deny that she is entitled to such share.

A part of the real estate which the plaintiff asks for an order to sell is incumbered by mortgages. The court granted an order of sale of both incumbered and unincumbered real estate, and directed that, of the proceeds of the unincumbered real estate, one-third be paid to the widow, and that the proceeds of the incumbered real estate be applied first in payment of the mortgages and taxes due thereon, and one-third of the balance be paid to the widow. She appeals from the order allowing her only one-third of the balance of the proceeds of the incumbered real estate. The other parties appeal from the order allowing her any part of the proceeds arising from the sale of either incumbered or unincumbered property.

*Bowen & Leavens*, for the executor.

*St. John & Williams*, for the widow.

*Berryhill & Henry* and *L. W. Goode*, for other defendants.

ADAMS, CH. J.—We have first to inquire whether the widow was entitled to any part of the proceeds. The executor and heirs insist that she is not, because her husband made a devise to her of certain property, and provided that the devise should be " in lieu of dower." And, while she had disclaimed the devise under section 2452 of the Code, it is said that such disclaimer cannot have the effect to give her a right to dower, because she is estopped from claiming such right by reason of what was done in her behalf, and accepted by her, at the time the will was made. The testator at the time he made the will conveyed by deed certain real estate to his wife, and it is claimed by the executor and heirs that the provision thus made, in connection with the will, was understood by both him and her to be in lieu of dower, and that she cannot now claim dower without renouncing all claim under the deed as well as will, which she has not done.

To this position of the executor and heirs she interposes several objections, and among them the fact, as she claims it

to be, that she has received nothing under the deed in lieu of dower, because she paid a full consideration for all she received under the deed. The executor and heirs deny the payment of such consideration. The consideration relied upon by her is alleged to consist in the cancellation of certain indebtedness due her from her husband.

About the time of the execution of the deed and will Mrs. Sypher surrendered and canceled five promissory notes held by her against her husband, amounting to several thousand dollars. F. M. Hubbell, who was present as an attorney, drew a memorandum, which was signed by Mr. and Mrs. Sypher, showing the cancellation of the notes. Mr. Hubbell was examined as a witness, and in his testimony he says: "These notes were settled by Mr. Sypher deeding to his wife certain pieces of real estate."

It is claimed, however, by the executor and heirs, that Mr. Hubbell was mistaken. It seems, indeed, to be conceded that a part of the notes held by Mrs. Sypher were given for money due her son, Charles Keene. The executor and heirs claim that all the notes were of that character. Now, Mr. Sypher settled with Charles Keene at the same time by deeding to him certain real estate. This, it is said, accounts for the cancellation of the notes, and shows how it is that Mr. Hubbell came to misunderstand the transaction. In corroboration of this view our attention is called to the fact that the deed to Mrs. Sypher recites a consideration of love and affection and one dollar. But the attorney who drew the deed does not appear to have had any instruction in regard to the consideration, and we can conceive that Mr. and Mrs. Sypher did not deem the recital as to consideration material. Various other matters are urged upon our attention as tending to show that Mr. Hubbell was mistaken, but we have to say that they do not satisfy us that he was.

In this connection we ought perhaps to notice an objection which was urged to Mr. Hubbell's testimony. The executor and heirs claimed that it was inadmissible, because the settle-

ment between Mr. and Mrs. Sypher was expressed by a written contract, to-wit: the memorandum already referred to, and it is claimed that parol testimony was incompetent to add to or vary its terms. The memorandum is as follows:

" This memorandum witnesseth that R. W. Sypher and his wife have this day made a full and complete settlement of all money transactions between them. Mrs. Sypher surrenders, duly canceled, to R. W. Sypher the following notes she holds against him (then follows the description). And all sums of money that Mr. Sypher has paid out for his wife are hereby paid up, so that nothing is coming to either party." The executor and heirs contend that the memorandum is a contract whereby it ·was agreed that the money due to Mrs. Sypher should be considered as settled and paid by the money which. had been paid out for her. . In our opinion the memorandum is not a contract by which the settlement was effected, but a mere declaration designed as evidence of what was embraced in the settlement. As to how the settlement was effected, or what consideration passed, the memorandum appears to be silent. We think that Mr. Hubbell's testimony was admissible.

Having reached the conclusion that the deed executed to Mrs. Sypher was in consideration of indebtedness due her, it follows that in our opinion the deed and will are not to be taken together as constituting a provision for her in lieu of dower, which she was bound to accept as such so long as she claimed the benefit of the deed.

Whether we should not reach the same conclusion under section 2203 of the Code, with the construction put upon it in *Linton v. Crosby*, 54 Iowa, 478, we need not consider.

We come now to a question raised by Mrs. Sypher's appeal, and that is as to whether Mrs. Sypher's distributive share of the mortgaged land should contribute *pro rata* to the discharge of the mortgage. In *Wilson v. Hardesty*, 48 Iowa, 515, it was held that the widow's distributive share should not contribute *pro rata* to

1. DOWER: in mortgaged lands: payment of mortgage.

the discharge of the mortgage, but was liable only second-arily, that is, after the other property covered by the mortgage had been exhausted. Mrs. Sypher relies upon that case as holding the doctrine for which she contends.

That case differs from this in the fact that the widow's dis-tributive share in that case was the homestead. It is said, however, that while such is the fact the conclusion reached in that case cannot logically be based upon such fact, but only upon the general ground that the widow's distributive share is not liable in any case to contribute *pro rata* to the discharge of a mortgage. The argument is that the setting out of the widow's share is a disposition of the homestead (Code, § 2008), and furthurmore, that the widow cannot have both a distributive share and homestead (*Butterfield v. Wicks*, 44 Iowa, 310); that the provision that the distributive share may be set out in such way as to embrace the ordinary dwelling house (Code, § 2441) was designed merely to specify the property that should be included in her one-third share, and not to give her rights which would make her share more than one-third in value.

It is sufficient to say that the reasoning upon which the decision in *Wilson v. Hardesty* is based is satisfactory to a majority of the court. It follows that we do not regard the ruling in that case as necessarily extending to a case like the present. In the present case there is no homestead, and the widow cannot be aided by reason of any homestead exemp-tion.

But she contends that while it may be true that the ruling in the case of *Wilson v. Hardesty* does not by express terms extend to a case like the present, it would have been proper to have placed the ruling upon the general ground which would have enabled it to do so. The argument in support of this view is that the widow's distributive share of real estate is not liable for unsecured debts (*Mock v. Watson*, 41 Iowa, 241); that as between her and the heirs their real estate (if it is necessary to resort to real estate), should bear

the whole burden; that the rule as between her and the heirs cannot be changed or affected by the mere execution of a mortgage; that the design of the mortgage is merely to benefit the creditor, and not the heirs, and that it is our duty to so construe it that it shall have that effect, and that it will have that effect if we hold that her share is not subject to a *pro rata* primary liability, but a secondary liability.

But, in our opinion, the relation which the widow sustains to unsecured debts is very different from that which she sustains to debts which she has expressly secured, as in this case, by her own act upon the land in which she is dowable. The law very properly exempts her share from liability for unsecured debts, because in contemplation of law she has no voice in contracting them, and the exemption in questson is imperatively necessary for her protection. The rule, it is true, will sometimes work a great hardship; it will sometimes reduce the heirs to penury, and leave the widow rich, but it is deemed justifiable on account of the necessity of affording the widow protection when she is powerless to protect herself. But the reason fails when with her own hand she joins in executing an incumbrance upon the land in which she is dowable. She does this in the exercise of the discretion which the law gives her, and with the view of enhancing the personal assets of which she, upon the death of her husband, becomes distributee.

Again, the share given her by law is a certain fraction *in value.* Code, § 2440. When she has joined in executing an encumbrance upon the land for the purpose of enhancing the personal assets, we do not think that she ought to be allowed to claim that the value of the land so encumbered is to be estimated independent of the incumbrance. It is said, to be sure, that this doctrine cannot be sound because it is not applied where the mortgage embraces with other property the homestead, and the widow's share is set out in the homestead. But in case of such a mortgage the law puts a construction upon it at the time of its execution. It makes it a primary charge upon the land not embraced in the homestead,

and it is to be presumed that the wife joined in the execution of it with that understanding. Besides, there is something of public policy involved in this matter of homestead exemption, which must be allowed its influence in any attempted adjustment of these complicated and conflicting claims. The rulings, then, in cases where the homestead is involved, should not prevent us in other cases from imposing upon the word *value*, as used in the statute, its proper limitations. In our opinion Mrs. Sypher, when she executed the mortgage, subjected her distributive share to a *pro rata* primary liability.

The conclusion here reached is independent of any common law decisions, but it is proper that we should say that it is in harmony with the rule at common law. *Rosseter v. Cassitt*, 15 N. H., 38; *Hastings v. Stevens*, 9 Foster, 564; *Danforth v. Smith*, 23 Vt., 247; *Bank of Commerce v. Owens*, 31 Md., 320; *Swaine v. Perine*, 5 Johns. Ch., 482; *Van Vrouker v. Eastman*, 7 Met., 157.

It is said, however, that the common law rule is not entitled to any weight, because, under our statute, the title does not, as at common law, pass to the mortgagee.

But we are unable to see how the retention of legal title by the mortgagor can give the widow greater rights. That she is dowable in mortgaged land no one disputes, and she is so irrespective of the question as to whether the legal title has passed to the mortgagee or not. The question as to whether, by the mortgage, her distributive share has become subjected to a *pro rata* primary liability, or only to a secondary liability, is something quite foreign to the question as to where the legal title is.

The court held that the proceeds of sale should be applied by the executor in the payment of taxes due on the land, as
2. ———:    well as the mortgage. This the widow complains
taxes.    of as error. She insists that taxes should, under
the statute, be paid out of the personal assets. Code, § 2420. Doubtless they might and should have been so paid if the executor had such funds. The object of the statute is to make

taxes *preferred indebtedness*, but we do not think it was de-signed to make them payable out of any particular fund. We can see that in some instances the widow's interest would be subserved by the payment of them out of the personal assets, but we are unable to conclude that it 'is her right to insist that they shall be so paid. It is true that in the matter of taxes she does not, as in that of a mortgage, impose the charge with her own hand. But taxes are a charge growing out of the land itself. They are the tribute which the property owes to the government. They are the expense incident to the condition under which the rights of property are enjoyed.

We conclude that there was no error in ordering them paid out of the proceeds of sale. On both appeals the judgment of the court below is

AFFIRMED.

BECK, J., *dissenting.*—In *Mock v. Watson et al.*, 41 Iowa, 241, which was followed in *Kendall v. Kendall et al.*, 42 Iowa, 464, we held that the land assigned as the dower of the widow is not subject to the debts of the estate of her deceased husband. Those cases differ from the one before us in this: The debts in the cases just mentioned were not secured by mortgages upon the lands assigned as dower; in the case before us, the mortgage covered such land.

We will inquire whether the rules of those cases are applicable to the case at bar. We will take certain statutory provisions and legal principles which we think determine the question.

A mortgage does not operate to convey the title of the land. Code, § 1938. It creates a lien thereon, and nothing more.

The wife, by joining the husband in execution of the mortgage, relinquished no right she has to the property. She simply subjects her interest to the lien of the mortgage. In the case of a conveyance of the land by joining her husband,

she relinquishes all her right and interest in the land. Consideration of these propositions will establish their soundness.

At common law a mortgage conveys the title to the land, and the wife by joining therein relinquishes all claim and rights to the land. Hence, under the common law, a widow is required to make contribution to redeem from a mortgage upon land of which she is endowed. Under our statutes the reason for this rule does not exist.

The wife assumes no obligations to pay the mortgage debt. She unites in the mortgage in order to create a security upon the land for the husband's debt. This debt, as we interpret the statute, must be paid by the estate of the principal debtor; the husband, and the wife's property, which is a part of the security, can only be made subject to whatever sum remains unpaid after the property of the estate it exhausted. This result is surely in accord with justice.

I conclude that the land set apart to plaintiff as dower cannot be made subject to the mortgage until all the other assets of the estate of her deceased husband are exhausted. I hold that plaintiff is entitled to the same rights she would have did no mortgage exist, except as against the mortgagee, and that the rule of *Mock v. Watson* is applicable to this case.

I conclude that the decision of the Circuit Court in holding that the proceeds of the incumbered real estate should be first applied to the payment of the mortgage is erroneous, and that the judgment upon the appeal of the widow should be reversed.