# WESTERN UNION TEL. CO. v. G. B. BULLARD.

## January Term, 1895.

*Erection of telegraph line in street.   Consent of abut-
ter acted upon cannot be revoked.   Injunction.
Decree for damages.   Reversioners.*

1.  An abutter, who has consented to the erection of a line of tel-
egraph poles along the street in front of his premises, can
not revoke that license after the poles have been set, but
before the wires have been strung.

2.  By consenting to the erection of the line, the land owner
waived any claim he might have for damages, and it is
therefore immaterial whether the construction of a tele-
graph line along a public highway imposes an additional
burden, and if so, whether one who does not own the fee
of the street can claim compensation.

3.  Persons having a reversionary interest in the premises are not
necessary parties, for consent of the defendant did not give
an easement, but a mere license.

4.  Equity will enjoin an abutter from interfering with the main-
tenance of a telegraph line so constructed by his consent,
and damages for injuries done the line may be decreed in
the same suit.

Bill in equity.   Heard at the June term, 1894, Caledonia
county, upon the report of a master and exceptions of the
defendant thereto.   Tyler, Chancellor, *pro forma* decreed
that a perpetual injunction be granted, and that the orator
recover forty dollars damages and its costs.   The defendant
appeals.

The orator prayed that the defendant be perpetually en-

joined from interfering with its telegraph line opposite his premises, and for general relief. The bill alleged that the defendant had partially destroyed and proposed to entirely destroy the orator's line unless restrained, and the master found that the damages occasioned by what the defendant had done before the granting of the temporary injunction were forty dollars. The facts fully appear in the opinion.

*Harry Blodgett, W. P. Stafford,* and *Bates & May* for the orator.

The defendant, having given the orator license to erect its poles, could not revoke that license after it had been acted upon by the orator. *Ricker* v. *Kelley,* 1 Greenl. 117 ; *Rerick* v. *Kern,* 14 Serg. & Rawle 267 ; *Adams* v. *Patrick,* 30 Vt. 516 ; *Hawthorne* v. *Seigel,* 88 Cal. 159 ; *Vannest* v. *Fleming,* 79 Iowa 638.

It was not necessary to join the defendant's daughters, who owned the reversion, for the defendant's license would not bind them. *Jackson* v. *Johnson,* 5 Cowen 74, 15 Am. Dec. 433 ; Washburn, Eas., 114; *Barker* v. *Richardson,* 4 Barn. & Ald. 579; *Higgins* v. *Farnsworth,* 48 Vt. 512.

The erection of telegraph poles along a public highway does not impose an additional burden. *Prince* v. *Drew,* 136 Mass. 75 ; *Hewitt* v. *Tel. Co.,* 4 McKey 424 ; *Building Ass'n* v. *Bell,* 88 Mo. 258.

*Dunnett & Nelson* for the defendant.

The defendant could revoke his license so long as it was executory. *Ruggles* v. *Lesure,* 24 Pick. 187.

His daughters, who owned the abutting premises, were necessary parties. *McConnell* v. *McConnell,* 11 Vt. 290 ; *Day* v. *Cummings,* 19 Vt. 496; *Mallow* v. *Hinde,* 12 Wheat 194.

The erection of a telegraph line along a highway imposes an additional burden, and the legislature cannot authorize it without compensation. *Dusenburg* v. *Mut. Tel. Co.*, 11 Abbott N. C. 440; *Metropolitan Telep. & Tel. Co.* v. *Colwell Lead Co.*, 67 How. Pr. 365, 50 N. Y. Sup. Ct. 488; *Broome* v. *N. Y. and N. J. T. Co.*, 42 N. J. Eq. 141; *Halsey* v. *Rapid Transit Street Rd. Co.*, 47 N. J. Eq. 380; *Willis* v. *Erie Telep. & Tel. Co.*, 37 Minn. 347; *Board of Trade Tel. Co.* v. *Barnett*, 107 Ill. 507; *Smith* v. *Central District Printing and Tel. Co.*, 2 Olin Cir. Ct. 259; *W. U. Tel. Co.* v. *Williams*, 86 Va. 696; *Chesapeake and Potomac Telep. Co.* v. *McKenzie*, 74 Md. 21; *Stowers* v. *Postal Tel. Cable Co.*, 9 S. Rep. 356; *Postal Tel. Cable Co.* v. *Irvine*, 49 Fed. Rep. 173.

TYLER, J.   The report of the special master has practically settled the matters in controversy in this suit.

No. 32, Acts of 1888, which is an amendment of s. 3633, R. L., gives telegraph and telephone companies the right to construct and maintain their lines upon any highways in this state, though not to interfere with the public use of such highways.

It being found desirable to erect this line along the street of a village and in front of and near the defendant's residence, substantially where the old line stood, it was his right under s. 3635, R. L., to apply to the village trustees, who were empowered to determine through what streets and in what manner the line should pass.   Though the defendant did not apply to these officers, "the location and the manner of replacing and repairing the line were adopted upon conference between the orator and the trustees, * * * and the trustees approved of the work as it progressed."

The defendant's premises constituted a fine residential property fronting on this street, and he desired to cultivate his grounds, which commanded an extended and picturesque

view, and make the place a model of beauty.   His counsel contend that as it was found that the line caused some damage to the property, the orator should have proceeded under s. 3637, R. L., which provides that the selectmen shall in such cases appraise the damage before the line is erected. This should have been done if the defendant objected to the erection of the line.

Upon this subject the master finds "that the poles and wires do interfere somewhat with the defendant's shade trees, but that results from the fact that the trees overlap a public street," "that the poles do somewhat mar the beauty," that "the outlook is interrupted," and "that there was some trimming of the branches of the trees that overhung the street."   He also finds that the manner of construction of the line was reasonable and proper, and that the trimming was of the smaller twigs and was carefully and properly done.

It was held in *Rugg* v. *Tel. Co.*, 66 Vt. 208, that section 3637 was to be construed, in the light of the preceding sections, to mean that the selectmen were not to assess damages in the cases named in the section except when objections were made.

The findings are that the old posts had become dilapidated, unsightly and unsafe, that the trustees had made complaint thereof to the company, which undertook to replace the old line with a new one on the southern side of Eastern avenue, and that the location was agreed upon.   Before anything was done the trustees informed the defendant of the proposed plan with its material details, to which he gave his consent.   The agent of the company, relying thereon, proceeded to prosecute the work, erected poles on the avenue as far as the defendant's estate, and one pole opposite thereto.   Other poles were left upon the ground and holes were dug for them, when the defendant objected to those selected to stand on each side of his driveway, and was allowed to

select others, which he did, and said they were satisfactory
to him.   The orator's agents then set these two poles in the
line, and the next morning the defendant directed his man
to cut down one of them, warned the agents not to proceed
further, threatened violence if they should do so, and gave
notice that he should remove the poles as fast as they were
erected.   Later in the same day upon a conference with the
trustees he withdrew his objection and said that he would
not object further, whereupon the line of poles opposite his
premises was completed, and the cross arms were nailed on
and prepared for the wires.   This was on Saturday.   Sun-
day night he proposed to one of the trustees to run the line
in the rear of his buildings, and notified the trustee in behalf
of himself and daughters "that he would not have any lines
or telegraph poles and wires in front of his premises."   This
was communicated to the company's agents who had the
work in charge.   Early Monday morning the company's
agents strung two wires upon the arms, and later in the day,
by the defendant's directions, one arm was sawed off and
one pole was cut down, which acts were the cause of moving
for the injunction.   So it appears that nothing was done
about erecting the line in front of the defendant's premises
without his consent except stringing the wires Monday
morning.

It is found that the orator was a corporation which, for
many years prior to 1880 and ever since, has operated a
telegraph line along the Passumpsic division of the Boston
& Maine railroad from Newport to St. Johnsbury, and
thence connecting with the principal cities of the country.
The company's office since 1880 had been in Union block
on Main street, about one hundred rods west of the railway
station, and from it poles and wires ran through Eastern
avenue to the station.   From this office the train despatch-
ing messages were sent, and it was also for the accommoda-
tion of the general public.

The defendant had given the orator's agents permission to do all that had been done down to the stringing of the wires. They had acted on his consent and incurred expense. In view of the facts stated his consent was irrevokable at that stage of the work, certainly without an offer to place the orator in *statu quo.* To have prevented the completion of the line would have operated as a fraud upon the orator. The doctrine of equitable estoppel should be applied. *Clark* v. *Glidden*, 60 Vt. 702 and cases cited; *Ricker* v. *Kelley*, 1 Green. 117 s. c. 10 Am. Dec. 38; *Rerick* v. *Kern*, 14 Ser. & Rawle, s. c. 16 Am. Dec. 497.

In *Hudson Tel. Co.* v. *Jersey City*, 49 N. J. L. 303, under a statute which required that the authorities of incorporated cities and towns should designate the streets in which telegraph poles and wires should be placed, it was held that after such designation by the defendant's common council, and the erection in the designated streets of from thirty-five to forty posts at an expense of about ten dollars each and an expenditure of some other moneys, the plaintiff's right was irrevocable; that after the expenditure of money in reliance upon such designation, the plaintiff obtained a vested right, of which it could not be deprived by a subsequent revocation.

There is an elaborate discussion of the doctrine of parol license and revocation thereof in the notes to *Rerick* v. *Kern*, in 2 Am. L. C. 546, 577, where the editors say that the apparent discrepancy in the numerous cases considered is, after all, chiefly in "the form of the remedy and the forum where it should be sought, and hardly extends to the existence of the right or the interpretation of the principles on which it rests." *Foster* v. *Browning*, 4 R. I. 47. Everyone must assent to the position taken by Chief Justice Gibson in *Rerick* v. *Kern*, that equity will decree a specific performance when compensation in damages would be inadequate to the purposes of justice, and that the partial execu-

tion of a parol agreement may supply the want of a writing, and withdraw the case from the operation of the statute of frauds. Nor would it be easy to take any valid exception to the dictum of the same judge in *Swartz* v. *Swartz*, 4 Barr, 353, 358, that when the revocation of a license would operate as a fraud, a chancellor will turn the licensor into a trustee, *ex malficio*, for the licensee, on principles analagous to those which apply when the owner of land stands by and allows another person to make improvements on it, under the belief that he will be allowed to reap the fruits of his labor and expenditure.

In *Williams* v. *Morris*, 95 U. S. 457, it is said:

"Where one of two contracting parties has been induced or allowed to alter his position on the faith of such contract, to such an extent that it would be a fraud on the part of the other party to set up its invalidity, courts of equity hold that the clear proof of the contract and of the acts of part performance will take the case out of the operation of the statute, if the acts of part performance were clearly such as to show that they are properly referable to the parol agreement." Chit. on Cont. 66, 278; 2 Sto. Eq. Jur. s. 761.

The defendant further contends that the legislature cannot by law subject a public street to this use without compensation to the owner of the abutting land for damages, and that it was in this view that s. 3637 was enacted.

It has been a controverted question whether the use of a street or highway for a telegraph or telephone line imposes a new burden upon the land for which the owner would be entitled to compensation. It has been contended on one side that the easement of the highway is the right of use of the public generally for the purpose of intercommunication, not only for travel, but also for the transmission of intelligence; that the use of the telegraph, being for a public purpose, is not inconsistent with the use for which the highway was dedicated. On the other hand it has been argued that streets and highways were designed for public travel and

transportation, that they were dedicated or condemned for those purposes, and that their use for the transmission of intelligence is an entirely different use, and could not have been contemplated when the land was taken.   Keasey on Electric Wires, 71.

The defendant's counsel have referred us to several authorities in support of the latter claim, but in nearly every case the title of the aggrieved owner extended to the center of the street, so that the structure was on his land.   In this case it is found that the Bullard property was carved out from land of Joseph Fairbanks, who owned where the avenue now is, and that the Bullard title extends north only to the south line of the avenue, which was laid before the defendant acquired his title, and that the telegraph line is wholly off the defendant's land and within the limits of the avenue.

Some authorities hold, and the defendant contends, that the rights of the abutter, as between him and the public, are substantially the same whether the fee is in him subject to the public use, or in the municipality in trust for street uses proper.   Dill. on Mu. Cor. 698.   Other authorities make the determinative question whether the fee is in the land owner or in the public, and allow compensation in the former case and deny it in the latter.

It is unnecessary to decide these questions now, for the reason that whatever rights the defendant had he gave up by his consent.   In the circumstances there was no occasion for the selectmen to assess the damages.

It appears that the defendant occupies this land as tenant by the courtesy, and claims that his consent could not bind his children, who hold the reversionary interest, and who are not made parties to the suit.   The right conferred was not an easement in the land; it was a mere license to do a certain act along the street, and not upon the land of the reversioners.

The general prayer for relief in a bill in chancery is sufficient to obtain all relief consistent with the general frame of the bill. *Danforth* v. *Smith*, 23 Vt. 247. Under this prayer, and to prevent a multiplicity of suits upon a bill to restrain a trespass, damages may be awarded for injury from the trespass prior to the injunction. 1 Daniel's Ch. 377, notes. It is said in *Whipple and Wife* v. *Fair Haven*, 63 Vt. 221, * * * "it is a familiar rule that when the court of chancery has jurisdiction of a case for one purpose it will retain it for all other purposes, and dispose of the whole matter. And this is a salutary rule, for it prevents litigation, and to end that is for the public good."

*Decree affirmed and cause remanded.*