## HODGSON v. JEFFRIES.

EASEMENT. — *License.* — *Drain.* — A license by the owner of land to the owner of adjoining land to construct and use perpetually a ditch over the land of the former for the purpose of draining the land of the latter, may be verbal, and, upon such construction and continued use, is irrevocable by the grantee of the former, though unforeseen injuries result to the former and his grantee from the construction and use of such drain.

EVIDENCE. — *Witness.* — In an action by or against heirs, founded on a contract with the ancestor, affecting the property of the ancestor, it must be made to appear, in some legal way, that the ancestor is dead before an objection can be sustained to the competency of a party to testify as to a matter which occurred prior to the assumed death of the ancestor.

SAME. — *Construction of Statute.* — The grantee of land, though the son of his grantor, cannot object to the competency of a party to an action against him, which is founded on a contract with his father, affecting said land, to testify as to a matter which occurred prior to the death of his father. Section 2, 3 Ind. Stat. 560, does not apply in such a case.

SAME. — *Drain.* — *License.* — In an action by one who has constructed and maintained a drain from his own land across the land of another by the alleged license of the latter, for an obstruction of the drain by the latter, the plaintiff may properly show in evidence, as showing the extent of the injury caused by the obstruction, that there was no other outlet than said drain for the water flowing in the lateral ditches cut by him on his own

land; but the defendant cannot show that plaintiff had another outlet than said drain, over his own land, by which he could drain his marshy and wet land, when such evidence does not tend to show that the flow of water in said lateral ditches could be carried off without the aid of said drain; nor in such an action can the defendant, for the purpose of showing that such license had not been given, or, if given, had been revoked, prove that he or his grantor had built, close to the drain, his house and barn, and made other improvements which could not properly be enjoyed if the drain should be continued.

INTERROGATORIES TO JURY.—A jury can be directed to answer interrogatories only on condition that they find a general verdict.

VENDOR AND PURCHASER.—*Notice.*—*Drain.*—A jury may infer .that the purchaser of land over which an open drain, with water flowing therein from the land of another adjoining, passes near the barn and barn-yard on the land purchased, had knowledge of the rights of the owner of said adjoining land to maintain said drain and flow the water from his own lands through it.

From the Henry Circuit Court.

*J. &. J. M. Brown*, for appellant.

*M. E. Forkner* and *E. H. Bundy*, for appellee.

DOWNEY, C. J.—The appellant, who was defendant below, assigns three errors in this case, viz.:

1. Overruling the demurrer to the complaint.

2. Sustaining the demurrer of the appellee to the second paragraph of the answer.

3. Overruling the defendant's motion for a new trial.

It is stated in the complaint, that the plaintiff is, and for twenty years last past has been, the owner of certain real estate, particularly described in the complaint; and that the defendant is and has been the owner of a certain other tract of land; that there runs through the lands of the defendant a natural stream of water, about thirty rods from the line dividing the lands of plaintiff and defendant; that the lands of the plaintiff are low and wet, and require draining, and that there is no outlet for that purpose, except through the lands of the defendant into said stream; that, in the year 1858, the defendant's father, Ellis Hodgson, was the owner of the land now owned by the defendant, and continued to own and occupy the same until about a year ago, when he

conveyed the same to the defendant; that the lands of the the defendant, lying between the said watercourse and the lands of the plaintiff, are wet, low and unfit for cultivation, unless drained; that, in the year 1858, the said Ellis Hodgson, in consideration that the plaintiff would cut a drain from the lands of the plaintiff to said watercourse, through the lands now owned by the defendant, and the benefits of said drain to the lands of the said Ellis Hodgson, gave the plaintiff a license to cut a drain from his land through the said lands owned by defendant into said watercourse, and to discharge water though the same, etc., thenceforth perpetually, so long as it might be necessary to drain his said land. It is then alleged that, on the faith of said license, the plaintiff did, in the year 1858, cut a large drain from his lands through the lands of the defendant, for a distance of thirty rods, into said watercourse, at a large expense; and, upon the faith of said license, he has cut and constructed a system of drains, in all three hundred rods, at an expense of three hundred dollars, upon his own lands, which discharge the water through said drain into said watercourse, and has so done for fifteen years; that said Ellis Hodgson, during all the time plaintiff was cutting and constructing said ditches, stood by, etc., and saw plaintiff expend thereon five hundred dollars and a large amount of labor and time, and did not object or controvert the plaintiff's right to cut the same or to flow the water, etc., but, by words and acts, encouraged the same; that, for fifteen years, he has uninterruptedly enjoyed said right, etc. It is then alleged that the defendant has filled up and obstructed said ditch, and rendered the same useless, and the plaintiff's lands are rendered unfit for cultivation, etc. Prayer for judgment quieting and confirming the plaintiff's rights, and for two hundred and fifty dollars damages, etc.

It is hardly necessary to re-examine the authorities bearing on the question here involved, as the law with reference to it seems to be settled in favor of the sufficiency of the complaint. The question is, whether the license given by

the grantor of the defendant could be revoked by the defendant, under the circumstances alleged. It is held that it could not. *Snowden* v. *Wilas*, 19 Ind. 10; *Stephens* v. *Benson*, 19 Ind. 367; *Lane* v. *Miller*, 27 Ind. 534; *Miller* v. *The State*, 39 Ind. 267.

In the second paragraph of the answer, the defendant avers that at the time his father gave consent to the plaintiff to cut said ditch, if he ever gave any such consent, the land was in woods, and he did not and could not foresee that it would be of any particular injury to him; that both tracts of said land were to a great extent covered with brush, prairie grass, logs, etc., and no great amount of water seemed to accumulate in or on the same, and since that time the plaintiff and the father of the defendant, as well as the defendant himself, have cleared their several tracts of land and put the same in cultivation; that the plaintiff owns over two hundred acres of land, and the defendant owns but forty acres of land, described in the complaint; that since the land of defendant has been cleared off, the water accumulates and runs to the head of said ditch more rapidly than before, and is thrown upon said defendant's lands by means of said ditch in large currents and freshets, and, without any direction so to do from the defendant or his father, the plaintiff has cut a system of lateral ditches on his own ground into said main ditch, and thereby augmented the rapidity of the flow of the water on the defendant's land; that since the land of defendant has been cleared and cultivated, and the roots have rotted away, the soil has become much more porous and susceptible of washing; and that said ditch is now, and has been for years past, doing great damage to the defendant's land; that said water has washed away the soil and widened said ditch, and thereby diminished the value of defendant's land, and is constantly encroaching upon the defendant's soil and washing the same away, and has washed in many places sixteen feet wide; that during the time of freshets and high waters the natural stream passing through

defendant's land, in consequence of the amount of water flowing therein from said ditch, swells to an unnatural height and overflows. It is further alleged that the plaintiff, at all times from the cutting of said ditch, has left the same open and uncovered, and the defendant's horses, cattle and hogs, while pasturing upon the grounds and fields of the defendant through which the ditch runs, when passing over and along the same, cut and work the soil therein with their hoofs, and the defendant cannot plough over said ditch, but has to turn and leave a large amount of ground next thereto uncultivated, and, to keep said ditch in proper condition to flow the water from plaintiff's premises, the defendant will have to build a fence on each side of said ditch, leaving a considerable space of ground and thereby creating a permanent obstruction through the defendant's ground; that the defendant's father and the defendant himself have built a house, barn and barn-yard, and planted an orchard on that part of the premises where this ditch passes, that being the most eligible site on said tract of land for said improvements; that these improvements were made at an expense of fifteen hundred dollars; that the ditch passes through the barn-yard of the defendant; that by reason of the facts above stated, if the ditch is allowed to remain on the lands of the defendant, it will work great and irreparable injury to said premises; wherefore, etc.

This paragraph of the answer is pleaded, and its sufficiency urged, on the ground that it sets up counter equities by showing that, although the license was given, yet the injuries resulting were unforeseen by the licensor. We do not think this answer a good bar to the action. Parties cannot be relieved from such acts on the ground that they did not foresee all their consequences.

Under the last error assigned, it is contended that the court erred in allowing the plaintiff to testify to the grant of the license by Ellis Hodgson. The ground of the objection was, that Ellis Hodgson was dead, and that according to the statute, 3 Ind. Stat. 560, sec. 2, his statements could not

legally be testified to by the surviving party to the contract or arrangement. To this counsel for appellee answer, that it does not appear that it was shown to the court, when the objection was made, that Ellis Hodgson was dead. This position appears to be correct. The objection assumes that he was then dead, but the fact was not made to appear in any legal way. But we are of the opinion that the case does not fall within that section of the statute, if it appeared that he was then dead.

Again, it is urged that the court erred in allowing the plaintiff to testify that he had no other outlet but the main ditch for the water flowing in the ditches cut by him on his own land, and in refusing to allow the defendant to prove that the plaintiff had another convenient outlet over his own land to drain his marshy and wet lands. It is claimed that these rulings of the court were inconsistent, and that one or the other of them must be wrong. The admitted evidence, it is claimed, had no tendency to prove the license, that is, that to prove that there was a necessity for a drain did not tend to prove that a license was given to construct one. We think, if the only purpose of the evidence was to show a necessity for a drain, that it should have been excluded. But the evidence went to show that if the main ditch was obstructed, the smaller ditches, constructed by the plaintiff on his own lands, emptying into it, would become valueless, and was, we think, properly admitted to show the extent of the injury to the plaintiff from the obstruction of the main ditch. The offered evidence was not to meet the admitted evidence, and show that the water accumulated in the ditches on the plaintiff's land could be carried off without the aid of the ditch through the defendant's land; but it was to show that the plaintiff had another convenient outlet over his own land to drain his marshy and wet land. The offered evidence was properly excluded, because it did not meet any evidence admitted or properly admissible in the case, on the part of the plaintiff.

It is next urged that the court improperly refused to allow

the defendant to prove that his grantor, Ellis Hodgson, had, in his lifetime, built his house and barn so near the ditch, and made his other improvements in such close proximity thereto, that they could not be properly enjoyed if the ditch should be continued. Counsel for appellant urge that this evidence would have served two proper purposes: 1. To show that no license had been granted to the extent claimed. 2. To show that if any such license had been granted, it had been revoked by the consent of Jeffries, the plaintiff.

We think the evidence was properly excluded. We cannot see that the offered evidence had any tendency to establish either view presented. The acts sought to be proved were those of one of the parties to the arrangement, with which the other party was not shown to have had any connection. Again, we cannot see why the defendant's grantor might not have chosen to construct his buildings near to the ditch as well as at a distance from it, without thereby affording any inference that he was opposed to the existence or continuance of the ditch. Nothing favoring the defendant could properly be inferred from the facts which he sought to prove.

It is next submitted that the court erred in refusing to propound to the jury an interrogatory asked by the defendant. Several answers are urged to this question. A sufficient one is, that the jury were not by it directed to answer it in the event that they found a general verdict. It is only in this conditional form that interrogatories can be properly asked. 2 G. & H. 205, sec. 336. This rule has been applied in many cases, which, however, we need not cite.

Counsel call our attention, in a general way, to the instructions given and those refused; but no specific objection is pointed out to any of those given; nor is it claimed that any particular instruction asked was improperly refused. Two exceptions should be made to this remark, and they are as to charge number 2 given, and charge number 5 refused.

Charge number 2 given is as follows: "2. If the drain

had been constructed, and the water was flowing through the same from plaintiff's land, and the drain passed near the barn and barn-yard situated upon the land as purchased by the defendant, you may infer from such facts that the defendant, at the time of his purchase from his father, had knowledge of the rights of the plaintiff to maintain and flow the water from his own land through said drain."

The fifth charge asked and refused is as follows: "5. The existence of the ditch upon the land, when it was purchased by the defendant, is not sufficient notice to him that the plaintiff, or any one else, had or held any right to keep and maintain the same."

We think there was no error in this action of the court. It will be observed that the court only told the jury that they might infer notice to the defendant from the existence and use of the ditch, not that they were bound to do so, or that the inference or presumption was conclusive. If the fact of notice was material, and, in fact, the defendant had not such notice, he might have met the inference or presumption to be drawn from such facts by counter evidence.

This was an artificial watercourse, of considerable width and depth, passing near the buildings on the land, and was intersected by smaller ditches coming from the lands of the plaintiff, and, we think, in the absence of anything to the contrary, it might be fairly presumed therefrom that the defendant had notice of such facts, and of the plaintiff's rights, at the time of his purchase. *Paul* v. *The Connersville, etc., R. R. Co.*, 51 Ind. 527.

These are all the questions which are made by counsel in their briefs.

The judgment is affirmed, with costs.