(59 App. Div. 440.)

### In re ADRIANCE.

(Supreme Court, Appellate Division, Fourth Department. March 12, 1901.)

INTOXICATING LIQUORS—APPLICATION FOR LICENSE—CONSENT OF PROPERTY OWNERS—RIGHT TO WITHDRAW CONSENT.

The consent of the owner of property used exclusively as a dwelling, and located within 200 feet of a proposed saloon, to the granting of a license therefor, given without consideration, under Liquor Law, § 17, subd. 8, requiring the consent of two-thirds of such resident property owners, may be revoked at any time before the treasurer acts on the application for the license.

Laughlin, J., dissenting.

Appeal from special term, Cayuga county.

Petition of Edward H. Adriance for an order revoking a liquor tax certificate issued to William G. Ramage. From an order revoking the certificate, the said Ramage appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Frank M. Leary, for appellant.
Frank D. Wright, for respondent.

McLENNAN, J. The sole question presented by this appeal is whether or not the owner of a building occupied exclusively as a dwelling, situate within 200 feet of the place where it is proposed to carry on the business of trafficking in liquors, who, without any consideration therefor, gives his consent that traffic in liquors be carried on at such place, as provided in subdivision 8, § 17, of the liquor tax law, may revoke and cancel such consent at any time before it has been filed with, presented to, or in any manner acted upon by

the officer to whom application is made for a certificate authorizing such traffic. The appellant filled out an application in regular form for a liquor tax certificate which would authorize him to carry on the business of trafficking in liquors at No. 31 Grant avenue, in the city of Auburn, N. Y., for the term beginning on the 1st day of October, 1900. The application was dated and duly verified on the 13th day of July, 1900. Attached to such application were consents of the owners of buildings occupied exclusively as dwellings situate within 200 feet of the place where it was proposed to carry on such business. Such consents were in writing, were addressed to the treasurer of the county of Cayuga, and stated that the signers consented that traffic in liquors be carried on in such premises, as specified in the application or statement of the appellant. Such consents were also dated on the 13th day of July, 1900, and among the owners of buildings thus consenting was one Maria L. Young, whose consent must be counted to make two-thirds of such owners, as required by the statute. Thereafter, and on the 21st day of July, 1900, said Maria L. Young, by a notice also directed to the county treasurer, which was signed and sealed by her, stated, among other things, as follows:

"Whereas, after mature deliberation and consideration, it appears to me that the licensing of said party to sell and retail liquors at that place is not to be desired, and would be a decided injury to the property and property owners in the locality, [I] do hereby revoke, cancel, and annul my said consent so heretofore given, and do hereby give notice to whom it may concern that I object and oppose the granting and issuing of such license."

Such notice was duly served on the county treasurer and on the appellant on the day it bears date. About two months after service of such notice upon him, and shortly before the 1st day of October, 1900, the appellant presented his application or statement, with the consents of the owners of buildings, including that signed by Maria L. Young, to the county treasurer of Cayuga county, and obtained the liquor tax certificate in question. This proceeding was instituted to procure the revocation of such certificate upon the ground that at the time the appellant presented his application for the same he did not have the legal consent of two-thirds of the owners of the buildings occupied exclusively as dwellings situate within 200 feet of the place in which the business of trafficking in liquors was to be carried on, as required by the provisions of the liquor tax law. Upon the hearing before the county judge the appellant testified that, in reliance upon the consents signed by Maria L. Young and others, he expended about $300 in making his premises suitable for conducting the saloon business, and it is urged that this circumstance should have influence in determining the appellant's rights.

From the facts above recited it will be seen that the appellant was only misled by the action of Mrs. Young, if at all, for a period of eight days,—from July 13th, when her consent was given, until July 21st, when she attempted to revoke it,—and that application for a certificate was not made by the appellant until two months thereafter. While we do not think such consideration can have any weight in determining the question of law involved upon this appeal,

it is obvious that by ordinary prudence the appellant might have fully protected himself against such loss or expenditure. The consent of Maria L. Young was among the last obtained from the owners of buildings, and, if he had then presented his application, which was at that time filled out and verified, with such consents, to the county treasurer, and a certificate had been issued to him, concededly no effective revocation of consent could have been made. It is not necessary, under the liquor tax law, that the term during which traffic in liquors may be carried on shall commence when the certificate is issued, but such certificate, when issued, is required to and does expressly state when the term shall commence; which may be but for a single month prior to the 1st of May following. If, however, Maria L. Young had a right to revoke her consent before it was presented to the county treasurer, it is of no consequence that the appellant thereby sustained damage. What is the "consent" which it is urged is irrevocable? It is not a grant of any interest in the real property of Maria L. Young to the appellant. It is not a license authorizing the appellant to in any manner use her property. It is simply a declaration by Mrs. Young, made to the county treasurer, that on the 13th day of July, 1900, she was willing that the appellant, commencing at a future date named, should carry on the business of trafficking in liquors in the city of Auburn at No. 31 Grant avenue. The statement was true when it was made, but it was not true when it was presented to the treasurer for his official action, to his knowledge. At that time Mrs. Young had changed her mind; had become convinced, for reasons satisfactory to herself, that the carrying on of such business at the place in question would injuriously affect her property, and would be a menace to the other residents in that locality; and therefore she withdrew her consent before the time arrived when it could go into effect, and before it was presented to or acted upon by the person to whom it was directed, and protested against the granting of the certificate. Was the county treasurer then bound, or was it permissible for him, to still count her as consenting, disregard such protest, and issue a certificate by which he certified, in effect, that on the 1st day of October, 1900 (the date of the certificate), Mrs. Young was willing that the appellant should carry on the business of trafficking in liquors at the place specified? The certificate speaks as of the time when it is issued. It is of no consequence what the attitude of the property owners was months or years before the application for a liquor tax certificate was presented to and acted upon by the treasurer. The question presented to him was, what was the attitude of the property owners at the time he was called upon to act? The provisions of the act relating to consents were not enacted for the benefit of persons proposing to engage in the liquor traffic, but were enacted as an additional protection to the residents of a particular locality; were enacted so that the county treasurer may not, by a certificate issued by him, authorize the establishment of a saloon at a particular place, unless at least two-thirds of the owners of buildings occupied exclusively as dwellings situate within 200 feet of such place are willing and consent thereto at the time such certificate is issued.

The precise question involved upon this appeal, so far as we have been able to discover, has not been passed upon by the courts of this state; but the revocability of consents affecting a variety of business enterprises other than that of trafficking in liquors has been repeatedly considered, and the rule has been invariably adopted, that such consents, if given without consideration, unless it is otherwise provided by statute, may be revoked by the person giving them at any time before they are presented to or acted upon by the officer to whom they are directed, and whose action may be influenced or controlled thereby. In People v. Sawyer, 52 N. Y. 296, it was held that a taxpayer who had signed a petition directed to the county judge, asking that his town be authorized to issue its bonds in aid of the construction of a proposed railroad, was at liberty to have his name stricken from such petition at any time before the hearing before the county judge was closed, and that to persist in counting the name of such taxpayer as a petitioner for such bonding scheme against his protest was error, and such as to require the reversal of the order made by the county judge. Judge Grover, in writing the opinion of the court, said:

"This verification speaks as of the time of presenting the petition. This clearly shows that any one signing the petition has an undoubted right to withdraw therefrom before its presentation to the judge. After withdrawing, no one can truthfully swear that he desires to bond the corporation. The petition, so far as the name of any petitioner is concerned, is his paper before presentation to the judge, and he has a perfect right to have his name erased therefrom, and cannot be compelled to go on, and become an applicant to the judge for the bonding against his will."

The case of People v. Allen, 52 N. Y. 538, was a proceeding which arose under section 2, c. 314, of the Laws of 1869, providing for the bonding of towns in aid of railroads, and which act made an affidavit of a majority of the assessors of the town, to the effect that a majority of the taxpayers owning a majority of the taxable property had consented thereto, a condition precedent to the issuing of bonds by the town. It appeared that before the assessors made such affidavit certain taxpayers who had signed consents to bond signed and acknowledged in the same manner a paper revoking their consent, and requesting the assessors not to include them among the persons consenting. Those revocations were disregarded by the assessors, and they proceeded to make the affidavit required by the statute. It was held that such action was illegal, and that the affidavit was void, and the proceedings of the assessors and of the commissioners were reversed.

In the case of Town of Springport v. Teutonia Sav. Bank, 84 N. Y. 403, it was held that, where taxpayers had signed consents authorizing the bonding of their town in aid of a railroad, under chapter 314 of the Laws of 1869, a revocation of such consents, delivered to the assessors while those officers had the consents before them, and before they had acted upon them, or passed upon their sufficiency, was effectual to annul the consents; and, the residue of the unrevoked consents being insufficient to constitute the majority required by the statute, the assessors wrongfully made and filed the affidavit, and the condition upon which the power of the railroad commissioners to

issue the bonds wholly depended, to wit, the consent of a majority of the taxpayers, was not complied with. The court said, Rapallo, J., writing the opinion:

"The revocations were complete when delivered to the assessors before they had acted upon the consents. The consents had not been filed when the revocations were delivered, and the filing of the consents after such revocation of them was wrongful. The delivery of the revocation to the assessors was the proper mode of making them effectual, and not the filing of them with the town or county clerk. Their effect was to withdraw from the assessors the authority to make the statutory affidavit, and to file it with the consents, thus revoked. On this very ground the proceedings of the assessors in making and filing the affidavit and consents in disregard of the revocations were adjudged void and set aside by this court on certiorari in the case of People v. Allen, 52 N. Y. 538."

Many other town-bonding cases, so called, might be cited, in all of which it was held that a taxpayer who had consented to such bonding had a right to withdraw or revoke such consent at any time before it was presented to or acted upon by the officer or agent whose action was to be affected or controlled thereby. In none of those cases—and they are numerous—was it suggested that the right of revocation should be denied to a taxpayer because some railroad corporation had relied upon the consent of such taxpayer, and had expended money upon the faith thereof. Indeed, in many of the cases cited the railroads had not only been constructed, but the bonds had been issued, were sold, and held by innocent third parties; and yet no court, so far as I have been able to discover, has held that a mere consent, before acted upon, could not be revoked, or, if so revoked, that any right could be predicated thereon. In some of those cases it was argued that when the assessors came to make the affidavit required under the statute they were justified in swearing that a majority of the taxpayers of the town wished the town bonded in aid of a railroad, because at some time before they had so stated in a petition signed by them, notwithstanding the fact that such assessors had then before them declarations, signed by a majority of such taxpayers, that they were then opposed to such bonding scheme, and wished to withdraw their names from the petition signed by them. In others it was argued that the county judge should make an order declaring that a majority of the taxpayers of a town were in favor of bonding it, because at some time in the past they had signed a statement to that effect, notwithstanding the fact that at the time of making such order such taxpayers were before the county judge protesting against and opposing such bonding scheme. In all such cases the courts have held with entire uniformity that the affidavit or order speaks as of the time when made, and should state the fact as it exists at that time.

In People v. Goodwin, 5 N. Y. 568, which was a proceeding to review the action of referees appointed to hear an appeal from the decision of the commissioners of highways of a town in refusing to lay out a highway, and which involved the right of the owner of the property through which the highway was to run to revoke his consent previously given, it was held that such right to revoke existed until the consent was acted upon and the road laid out. The court said:

"The consent necessary to the power of laying out the road must be the consent of the owner at the time of the decision by the referees, or such consent of the previous owner as binds his successor in the title."

In the case of Hays v. Jones, 27 Ohio St. 218, it was held that resident landowners who had subscribed a petition praying for an improvement of a highway were at liberty at any time before such improvement was finally ordered to be made by the board of county commissioners to withdraw their consent by remonstrance, or have their names stricken from the petition, and that after such withdrawal such persons could no longer be counted as petitioning for the improvement. Bullock v. Transit Co., 23 Chi. Leg. N. 147.

In the case of McGonnigle v. Arthur, 27 Ohio St. 251, a majority of the landowners whose lands were assessed signed a petition, which was necessary under the statute, for the conversion of a turnpike into a free road; but of the persons who had signed such petition enough changed, and signed remonstrances so a majority of the persons whose lands were assessed opposed to the change in the road. Notwithstanding this fact, the commissioners to whom the consents and remonstrances were presented assumed to make an order directing that the turnpike be converted into a free road. It was held that the action of the commissioners was a nullity. The court said, in substance, that at the time the county commissioners made the alleged final order there was a clear want of jurisdiction over the subject-matter, for the reason that a majority of the landowners whose lands were assessed failed to petition for the proposed change, and the action of the commissioners in relation thereto was a nullity. It had become so well settled that an owner of property abutting upon a street in a city, who petitioned for an improvement of such street, as required by many of the city charters, might withdraw from such petition at any time before it was acted upon by the municipal authorities, and thus wholly annul and cancel his former consent, that most of the municipalities of the state have procured amendments to their respective charters, which provide, in substance, that no person signing such petition shall be permitted to withdraw his name from the same, or revoke his request or consent, until after the expiration of a certain time specified. We can conceive of no reason why a consent of a property owner that the business of trafficking in liquors be carried on at a particular place should be regarded as more sacred or more binding upon the person consenting than consents such as we have adverted to, and, in the absence of a holding to that effect by the court of appeals, we are not inclined to make such distinction.

We think the cases cited in support of the proposition that the consent of Mrs. Young was irrevocable are not susceptible of such interpretation. The case of In re Washington St. (Sup.) 14 N. Y. Supp. 470, can have no possible bearing upon the proposition. In that case it was simply held that the fact that two of the petitioners attempted to withdraw their names from the petition after the commissioners had been appointed was immaterial.

In the case of Orcutt v. Reingardt, 46 N. J. Law, 337, it was held:

"After the recommendation for license had been presented to the board [excise board], and jurisdiction had been acquired, a signer whose name has

not been procured by fraud could not, without the consent of the board, with-draw his name, and devest the board of jurisdiction."

This case would be analogous to the case at bar if Mrs. Young had sought to revoke her consent after it, with the appellant's application, had been presented to the county treasurer.

In Sutherland v. McKinney, 146 Ind. 611, 45 N. E. 1048, certain persons who filed remonstrances against the granting of a license to sell intoxicating liquors attempted to withdraw from such remonstrance, and it was held that such withdrawal could not be made after the beginning of the third day before the meeting of the board of county commissioners. In other words, the court in that case held that such remonstrance, to be effectual, must be made within the time within which the statute states persons are entitled to remonstrate.

In State v. Gerhardt, 145 Ind. 436, 44 N. E. 469, the same proposition of law is stated.

In City of Buffalo v. Chadeayne, 134 N. Y. 163, 31 N. E. 443, it was held that, where the common council of the city of Buffalo, by resolution, had given the defendant permission to erect a wooden building upon land owned by him, and he had entered upon the erection of such building, the city could not afterwards, by resolution, revoke such permission, and thus prevent the defendant from completing the building.

In Hudson Tel. Co. v. Jersey City, 49 N. J. Law, 303, 8 Atl. 123, it was held that the common council could not revoke a designation of the streets in which a telegraph company may place its poles, when such company has conformed to the conditions upon which the designation was made, and has expended money in placing its poles upon the designated streets.

In Telegraph Co. v. Bullard, 67 Vt. 272, 31 Atl. 286, it was simply held that an abutter who has consented to the erection of a line of telegraph poles along the street in front of his premises cannot revoke such license after the telegraph company has set its poles.

The case of Railroad Co. v. McLanahan, 59 Pa. St. 23, was a case in which a tenant in common conveyed an undivided moiety of his land. A railroad company afterwards erected a warehouse upon it. The other tenant then conveyed his half to the same grantee, reciting that the company had erected the warehouse, and in consideration was to allow a passage over its other land to the land of the grantors, their heirs and assigns. The grantee used the right of way. Held, that it was evidence to the jury of ratification by the grantee of the license to the company; and it was also held that, valuable improvements having been made upon the faith of the license, it was not within the statute of frauds, and a subsequent ratification by parol was equivalent to precedent authority.

The case of Wilson v. Chalfant, 15 Ohio, 248, simply holds that a parol license executed is irrevocable.

Hodgson v. Jeffries, 52 Ind. 334, simply holds:

"The license by the owner of land to the owner of adjoining land to con-struct and use perpetually a ditch over the land of the former for the pur-pose of draining the land of the latter may be verbal, and, upon such con-

struction and continued use, is irrevocable by the grantee of the former, though unforeseen injuries result to the former and his grantee from the construction and use of such drain."

In House v. Montgomery, 19 Mo. App. 170, the defendant was given permission to go over plaintiff's land if he would build a quarter of a mile of fence along one side of the way, and also inclose plaintiff's field. The defendant did build the fence, and afterwards, with plaintiff's consent, he planted a hedge fence, and cultivated it for years, and used the road across the plaintiff's premises, with his consent, continuously for 10 years. It was held that the plaintiff was equitably estopped from prohibiting the defendant from further using such way.

We have thus referred to all the cases cited which it is claimed sustain the proposition contended for by the appellant, and fail to discover that any of them bear upon, or in any manner refer to, the questions involved in the case at bar. We can conceive of no principle which would justify a holding that a mere consent, given without consideration, directed to a public officer, and which is to be made the basis of his official action, should be held to be irrevocable before it is presented to such officer or acted upon by him. The conclusion is reached that the order appealed from is right, and should be affirmed, with costs.

Order affirmed, with costs. All concurred, except LAUGHLIN, J., dissenting.

LAUGHLIN, J. (dissenting). The sole ground upon which the liquor tax certificate was annulled was that at the time of filing his petition and obtaining the liquor tax certificate appellant did not have the requisite consents of the owners of buildings occupied exclusively as dwellings situate within 200 feet of the premises in which the liquor traffic was to be carried on. The undisputed evidence on the hearing before the county judge showed that the application for the liquor tax certificate was duly verified by appellant on the 13th day of July, 1900, and that prior thereto he had obtained in due form the necessary consents, which he then had in his possession, of the owners of adjacent buildings required by the statute. Subsequently, and on July 21st, one of such consenting property owners, who owned two such buildings within the prescribed territory, filed with the county treasurer, and delivered to appellant, a notice directed to them, and signed and acknowledged by her, reciting that, "after mature deliberation and consideration, it appears to me that the licensing of said party to sell and retail liquors at that place is not to be desired, and would be a decided injury to the property and property owners in the locality," and further stated that she thereby revoked, canceled, and annulled her consent theretofore given, and thereby gave notice to whom it might concern that she objected to and opposed the granting and issuing of such license. The consent of this property owner was essential under the statute. Between the 13th and 21st days of July, relying upon said consents, appellant, who was the owner of the premises and the building in which he contemplated carrying on the liquor traffic, proceeded to

remodel the building, and furnish the same for saloon purposes, at an expense of more than $300. He originally intended to open the saloon on the 1st day of August, as is shown by the recitals in the consents and in the application. Upon being served with this revocation of consent, he consulted an attorney, and wrote to the attorney general for advice in the premises. The attorney general referred the matter to the commissioner of excise, who, by a written communication, advised the appellant that it was the opinion of the excise department that "consents once executed are not revocable, except in case of fraud or mistake, and such fraud or mistake must be judicially established, and the consents thereby secured must be canceled and annulled by the court, before being treated otherwise than as valid by officials charged with the duty of issuing certificates," and that the county treasurer had no authority to recognize the notice of an intent to revoke the consent previously given. The county treasurer, upon application, received similar advice from the excise department. It appears that thereafter, and acting in entire good faith, appellant presented the application and consents to the county treasurer, and obtained the liquor tax certificate in question. If, under the circumstances, the consenting property owner could thus legally revoke her consent, then the order appealed from is valid; otherwise, it is erroneous, and must be revoked. It is conceded that, if appellant had filed the consents and application on the 13th day of July, or prior to the 21st day of July, the attempted revocation would have been a nullity; but it is contended that until such filing the consenting property owner may revoke his consent at will, and that he cannot be deprived of this right by any expenditure of money or contract made in reliance thereon by the applicant for the liquor tax certificate.

Subdivision 8 of section 17 of the liquor tax law, being the provision relating to such consents, provides as follows:

"When the nearest entrance to the premises described in said statement as those in which traffic in liquor is to be carried on is within two hundred feet, measured in a straight line, of the nearest entrance to a building or buildings occupied exclusively for a dwelling, there shall also be so filed simultaneously with said statement a consent in writing that such traffic in liquors be so carried on in said premises during a term therein stated, executed by the owner or owners, or by the duly authorized agent or agents of such owner or owners of at least two-thirds of the total number of such buildings within two hundred feet so occupied as dwellings, and acknowledged as are deeds entitled to be recorded, except that such consent shall not be required in cases where such traffic in liquor was actually lawfully carried on in said premises so described in said statement on the twenty-third day of March, eighteen hundred and ninety-six, nor shall such consent be required for any place described in said statement which was occupied as a hotel on said last mentioned date, notwithstanding such traffic in liquors was not then carried on thereat. Whenever the consent required by this section shall have been obtained and filed as herein provided, unless the same be given for a limited term, no further or other consent for trafficking in liquor on such premises shall be required so long as such premises shall be continuously occupied for such traffic."

Section 19 of the liquor tax law originally vested in the county treasurer discretion to inquire into the facts in the application, and to refuse to issue the certificate if he found that they did not war-

rant the issuing thereof. But the section was subsequently amended so that the county treasurer now has no discretion, and must issue the certificate if the application in form and in its recitals shows a compliance with the statute. People v. Hoag, 11 App. Div. 74, 42 N. Y. Supp. 886; People v. Hilliard, 28 App. Div. 140, 50 N. Y. Supp. 909. It thus appears that these consents inure to the benefit of the owner of the premises in which it is intended to carry on the liquor traffic, and that he is entitled as a matter of right to a liquor tax certificate upon the production and filing thereof, together with an application in due form, with the county treasurer. The statute requires the applicant for a liquor tax certificate to conform to all of the provisions of law entitling him to a certificate at the time of filing his application, and requires that the county treasurer "shall at once prepare and issue" the liquor tax certificate. Sections 17–19, Liquor Tax Law. Where a property owner contemplates using his premises for the liquor traffic, the first thing that it is essential for him to know is whether the owners of neighboring property who have a voice in the matter will give the necessary consents. It would be hazardous for the applicant to incur a large expense in erecting a building for saloon or hotel purposes, or in fitting up his premises for saloon or hotel purposes, in advance of obtaining such consents; and it would be unjust to him to be obliged to take out and pay for the liquor tax certificate long before he would be ready to utilize his premises for the liquor traffic. If a hotel license be desired, the building must be ready for the reception of guests before filing the consents or obtaining a certificate. Section 17, subd. 9, and section 31. The statute should be so construed as to give the applicant a reasonable time after obtaining and before filing the consents to construct a suitable building or to make changes and alterations in his premises preparatory to commencing business, and without incurring the risk of having the consents revoked in the meantime. The effect of a transfer of title by one who has given such consent before the same is filed need not now be considered. The property rights of the owners of adjacent premises are not invaded by the opening of a saloon in the neighborhood. The owners of neighboring property have only such voice in the matter as the legislature has seen fit to confer upon them. Their rights, therefore, are conferred, defined, and limited by the statute. The legislature was not obliged to require that any consents of property owners be obtained as a prerequisite for a liquor tax certificate. As to premises used for liquor traffic at the time of the enactment of the liquor tax law, it was expressly provided that no consents of property owners should be necessary, and the court of appeals has recently decided that the right of such owner to continue the liquor traffic on such premises may only be lost by some act on his part indicating an intent to discontinue the liquor traffic. Subdivision 2, § 24, and subdivisions 6 and 8, § 17, Liquor Tax Law; In re Hawkins, 165 N. Y. 188, 192, 58 N. E. 884. The purpose of this exemption in favor of premises on which the liquor traffic was at that time conducted was to protect such property owners as to the money expended in fitting the premises for such traffic. People v. Murray,

148 N. Y. 171, 175, 42 N. E. 584. The same reason exists for protecting a property owner who, after obtaining the statutory consents, has expended money in good faith in preparing to conduct the liquor traffic upon his premises. It has been held that a liquor tax certificate constitutes a species of property, irrevocable except in the manner and for the causes prescribed by the statute; transferable by the holder thereof, who is entitled to the same protection in its security and enjoyment as the owner of other personal property. In re Lyman, 160 N. Y. 96, 54 N. E. 577; Niles v. Mathusa, 162 N. Y. 546, 57 N. E. 184; In re Lyman, 163 N. Y. 536, 57 N. E. 745; In re Kessler, 163 N. Y. 205, 57 N. E. 402. The only grounds of revocation are: (1) Material false statements in the application; (2) that the applicant was not entitled to receive a liquor tax certificate; or (3) is not entitled to hold the same on account of some violation of the law or other cause. Subdivision 2, § 28, Liquor Tax Law. Here there were no false statements in the application. In re Lyman, 163 N. Y. 536, 57 N. E. 745. It was not shown or contended that appellant, after receiving the certificate, violated any law which would justify its forfeiture. Inasmuch as appellant complied with every requirement of the statute, and no provision was made therein for revoking consents, and the county treasurer had no discretion with reference to issuing the liquor tax certificate, it would also seem, at least upon a literal reading of the statute, that he was entitled to receive the certificate at the time it was issued to him. But, even if such consents of property owners, before being acted upon or filed, are revocable at will, and without proof of fraud or mistake,—which need not now be decided,—yet when, as here, the applicant has expended large sums of money in good faith relying upon such consents, they may not be revoked at pleasure without other cause than that the signer has undergone a change of mind on the subject. No provision is made in the liquor tax law for notice to the signers of such consents of the filing thereof with the county treasurer, or for a hearing thereon. The privilege of consenting or refusing to consent is personal to the property owner. When, therefore, such consent has been acted upon by the person for whose benefit it was intended, there is no impropriety in holding that it may not be revoked to his prejudice. The consent was unlimited as to the time the liquor traffic was to be carried on, and by the terms of the statute (subdivision 8, § 17, Liquor Tax Law) it is not revocable—at least not after having been acted upon—so long as the premises shall be continuously occupied for such traffic. Prior to the attempted revocation of the consents in question, appellant had acquired a vested right to apply for and obtain a liquor tax certificate, and, he having also made contracts and expended money relying upon such consents and upon his right to a liquor tax certificate, the property owner is estopped from revoking her consent. In re Washington St. (Sup.) 14 N. Y. Supp. 470; Orcutt v. Reingardt, 46 N. J. Law, 337; Sutherland v. McKinney, 146 Ind. 611, 45 N. E. 1048; State v. Gerbardt, 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313; City of Buffalo v. Chadeayne, 134 N. Y. 163, 31 N. E. 443; Telephone Co. v. Jersey City, 49 N. J. Law, 303, 8 Atl. 123; Telegraph

Co. v. Bullard, 67 Vt. 272, 31 Atl. 286; Railroad Co. v. McLanahan, 59 Pa. St. 23; Wilson v. Chalfont, 15 Ohio, 248; Hodgson v. Jeffries, 52 Ind. 334; House v. Montgomery, 19 Mo. App. 170. I think that the purpose of this provision of the statute and the proceedings required thereunder distinguish this case from the town-bonding cases where the consenting and nonconsenting property owners were directly affected financially, and where it was not contemplated that any rights should become vested, or that any action should be taken by interested parties, until after the decision made by the assessors or county judge as to the sufficiency of the consents. In these cases a hearing was had before the assessors or county judge, and the matter was considered as a proceeding pending before those officials to determine whether the necessary percentage of the property owners favored bonding the town for the purpose of constructing a railroad. For these reasons it was held that each consenting or petitioning property owner had the right to withdraw his consent at any time before the application or petition was finally acted upon by the assessors or county judge. People v. Sawyer, 52 N. Y. 296; People v. Allen, Id. 538; Town of Springport v. Teutonia Sav. Bank, 84 N. Y. 403; Cagwin v. Town of Hancock, Id. 532.

The order should be reversed, with costs to appellant, and the proceeding dismissed, with costs to him also.