County Court, Cayuga County, April, 1904. Reported. 43 Misc. 498.

Matter of the Application of Daniel H. Patterson et al., for an Order of Revocation and Cancellation of Liquor Tax Certificate No. 15,957, Issued to William Byrne, at No. 292 Genesee Street, Auburn, N. Y.

Liquor Tax Law—Consent of owners of neighboring dwellings—What structures do and what do not constitute separate dwellings.

The west half of a double dwelling-house may properly be treated as a separate building for the purpose of obtaining the necessary consents to the conduct of the liquor traffic in the east half of such dwelling-house.

A frame building erected in the rear of the double dwelling house at a cost of $1,185, and divided by wooden partitions in seven equal parts each part being about eight feet wide, cannot be treated as seven separate dwellings for the purpose of obtaining such consents.

Proceedings under the Liquor Tax Law to revoke and cancel a liquor tax certificate.

F. D. Wright, for petitioners.

Greenfield & Aiken, for certificate holder.

William E. Schenck, for State Department of Excise.

SEARING, J.: This is an application for cancellation of a liquor tax certificate issued to one William Byrne by the county treasurer of Cayuga county on June 26, 1903, allowing him to traffic in liquors at No. 292 Genesee street, in the city of Auburn.

It is alleged that William Byrne, in his application for such certificate, incorrectly and falsely stated that he had the consents of the owners of two-thirds of the buildings used exclusively as dwellings located within 200 feet of the entrance to the saloon, the place where liquors were to be sold under said certificate.

On or about May 1, 1903, one C. August Koenig, owning large brewery interests in the city, became the owner of the house and premises known as Nos. 292 and 294 Genesee street, evidently for the purpose of establishing a saloon on the premises. The immediate neighborhood is occupied mostly for residential purposes, the only exception being that the building, upon the corner of Genesee and South Division streets, besides being occupied as a residence, is occupied in part by a grocery and meat market.

The premises owned by Mr. Koenig are located on the south side of Genesee street, between South Division and Van Patten streets, and are sixty-nine feet front and rear, and seven rods deep. In the center of this lot, east and west, and near the street, is located a double dwelling-house; the west half thereof is occupied by William Byrne and his family as a residence, and the east half is occupied by him as a saloon, under the certificate in question. It does not appear by the evidence whether William Byrne occupies the premises as a tenant, or by some other arrangement with Mr. Koenig, the owner; but it is fair to assume that he is a tenant of that portion of the premises occupied by him for residence and saloon purposes.

After Mr. Koenig became possessed of the premises, he attempted by personal solicitation, and through the aid of other persons, to procure the consent of the owners of the buildings within the limit occupied exclusively as dwellings as required by law, that the traffic in liquors might be carried on on the said premises, but without success, all such persons refusing.

At about the same time and shortly after, William Byrne also personally, and with the aid of other persons, attempted to procure such consents to enable him to obtain a certificate to sell on the premises of Mr. Koenig. In this he also was unsuccessful. Failing to obtain such consents, Mr. Koenig endeavored to purchase the properties of the owners of such buildings used as

residences, within 200 feet, but he was unable to effect a purchase of any of them. Having thus failed, he then caused to be erected across the rear end of his lot and premises a wooden building about sixty-three feet long, east and west, and about sixteen feet wide, north and south. The building was set on posts driven or set in the ground, with no other underpinning or foundation. The outside was covered with matched boards running up and down; the roof being constructed with rafters, roof-boards, and shingled in the ordinary way. Two floors were laid of matched lumber, one for the ground floor, and one above, which floors ran the whole length of the building. The building was then divided into seven equal parts, by running wooden partitions through the building north and south, and when so divided each part was about eight and one-half feet wide. On the north end of each division of the building was one door and a window, and one window in the rear. There was constructed in each part narrow open stairs, leading to the upper part of the division. This upper part was divided by a board partition into two rooms about eight feet square. In the rear of each division, and upon the outside of the building, was set on a bracket a tile chimney for the use of that division. At the time of the application for the certificate, the building had not been painted, but has been since painted. The inside of the building was sealed with Georgia pine, no lath or plaster being used in any part of the building. The cost of the building as testified to by the contractor was $1,185, or $169.43 for each of the seven parts. The building was completed at the close of the day of the 25th day of June, 1903.

On the morning of the next day, at about ten o'clock, William Byrne made the application for the certificate, which was granted at about 10:15 o'clock. Between ten o'clock A. M., and noon of that day, people, all, or mostly Italians, with some household effects moved into the building, and occupied some portions. The building has been more or less occupied from that time down to the submission of the case. The witness Puro, who procured the occupants of the building, testifies that he got them for Mr. Koenig, who hired him for that purpose, and that he obtained two men with their wives to occupy certain portions, and the other occupants (twenty-one in number) were single men, some of whom boarded, while others did their own cooking in the portions of the building which they occupied. The occupancy of the several portions has changed frequently, persons moving in for a short

time and then vacating, while portions have remained unoccupied during some or all of the time since.

The claim of petitioner is that this structure was erected for the purpose of overcoming the effect of the refusal of the neighbors to sign consents for Byrne to run a saloon at No. 292 Genesee street, and that the structure so erected and divided does not constitute seven buildings, and that they are not occupied *bona fide* as seven separate dwellings. It is evident that in the erection of the building, the intention was to make a sufficient number of dwellings on the premises Nos. 292-294 to overcome the effect of the refusal of consents by the owners of other dwellings within the prescribed limit.

From an examination of the application of Byrne for a certificate, and of the evidence, it appears that there were four buildings occupied exclusively as dwellings, other than the Koenig buildings, within the prescribed limit, the owners of which had refused to give their consents. To overcome these it was necessary to have the consent of the owner or owners of at least eight other buildings occupied as dwellings in order to meet the requirement of the law, which provides that the applicant for a license shall file consents of at least two-thirds of the owners of such buildings.

In this emergency the portion of the building on Mr. Koenig's property, known as No. 294 Genesee street, now occupied by Byrne as a dwelling, was counted as one such building (which I think fairly comes within the law, and should be counted and allowed). The other seven buildings relied upon were the seven divisions of the building constructed upon the rear of the premises. To sustain the certificate, it is necessary to hold that this structure, divided by partitions into seven parts, each eight and one-half feet wide, constitutes seven distinct buildings, each occupied exclusively as a dwelling; in other words, that it is a "block" of seven buildings, each a "dwelling-house" within the meaning of the law. In *Matter of Lyman* v. *Garrison*, 24 Misc. Rep. 552, the court in deciding an application to revoke a certificate upon the same grounds as claimed in this case, says: "This law, like any other, should receive a fair interpretation. It should not be construed harshly as against the holder of a certificate, nor interpreted so loosely as to emasculate its restrictive provisions and break down that protection which it gives to adjacent property owners, the public, and the dealer who honestly complies with all its conditions, as against one who seeks to evade it."

The restrictive features of the law were enacted by the Legislature for a purpose, that purpose evidently being to protect residential portions of a city and the owners of dwellings against the establishing of saloons in their midst. This same restriction applies also to the establishment of a saloon within a certain distance of a school or a church.

In the case of *People ex rel. Sweeney* v. *Lammerts,* in the Supreme Court, reported in 18 Misc. Rep. 343; 40 N. Y. Supp. 1107, the judge, in his opinion, says: "I can see no reason why a liberal construction should be given to the restrictive provisions of this act. It was probably intended by the Legislature to reduce the number of places in which the liquor traffic was carried on, and to increase the revenues by increasing the tax for doing business, and, in a measure, protect dwellings, schools and churches from surroundings dangerous to good morals, and tending to disturb the peace and quiet of the neighborhood, by limiting and prohibiting the places where such traffic may be carried on, and the court always furthers the effort of the Legislature by giving the statute such a construction as will carry out the legislative intent."

The legislative intent, no doubt, was that the consents required before a certificate could be issued to traffic in liquors at a place located in the midst of residences should be consents of owners of buildings occupied exclusively and in good faith as dwellings, and should not include buildings constructed, used and occupied as dwellings merely as a pretense and a show; not buildings constructed and tenanted temporarily, and for the purpose of evading the law. The consent of the owner of such "fake" buildings will not avail the applicant for a certificate, nor would it avail the owner of adjoining property to construct such buildings upon his land, for the purpose of requiring his consent; as the applicant for a certificate might disregard and not count such as a dwelling. Matter of Vail, 38 Misc. Rep. 392.

If the owner of a house and lot in a residential portion of a city, for the purpose of establishing the right to traffic in liquors upon such premises, can erect upon his property a building of the character described, partitioning it into a sufficient number of parts and calling them dwellings, and can thus obviate the necessity of obtaining the consents required by law from the owners of dwellings within the prescribed limit, and can thereby establish the right to maintain a saloon in their midst, then the

law is ineffectual in its object and intent, and is of no protection to residence owners. If so, as far as such owners are concerned, a saloon could be opened upon any residence street at almost any point.

I am of the opinion that William Byrne, in his application for the certificate, incorrectly and falsely stated that he had obtained and filed the consents of two-thirds of the owners of buildings occupied exclusively as dwellings as required by law, and that the seven divisions of the buildings upon the rear of the premises of Mr. Koenig, whose consent was filed with the application as owner of seven buildings occupied as dwellings, are not dwellings within the meaning of the law, and should not be counted as such.

After a careful consideration of the evidence submitted, and of what appears to me to be the purpose, effect and intent of the Liquor Tax Law, I determine that the application for the cancellation of the certificate should be granted. This determination makes it unnecessary to examine the other reason urged by the petitioners for revocation — that there were more than four buildings, within the limit, occupied exclusively as dwellings, other than those of Mr. Koenig's.

The attorney for the defendant contends that the proceedings should be dismissed, for the reason that petitioners have not affirmatively shown that the building occupied by the saloon was not occupied as a hotel on March 23, 1896, and that it is not shown that any consents whatever of the owners of buildings were required by law.

In my opinion the petitioners are not required to make it affirmatively appear as to either of such matters. This is a proceeding to revoke the license of the defendant for making a material false statement in his application for a certificate. But this omission, if important, the defendant has supplied in his application, wherein he has established the number of consents necessary to entitle him to a certificate by stating that there are twelve (12) buildings, dwellings, within the limit. Further, the testimony of the witnesses describing the buildings within the limit and their use and occupancy enables the court to determine the consents necessary to be obtained. As to the saloon building having been a hotel, the undisputed evidence is to the effect that the whole building, Nos. 292 and 294 Genesee street, was for years next

prior to the occupation by the defendant occupied as a double dwelling-house.

The application of petitioners is granted, with costs to be fixed in the order.

Application granted, with costs.