In re CLEMENT, State Excise Com'r.

(Supreme Court, Special Term, Wayne County. November, 1906.)

1. INTOXICATING LIQUORS—TAX CERTIFICATE—CONSENTS OF ADJACENT OWNERS.

Under Laws 1896, p. 60, c. 112, § 17, subd. 8, requiring consents of the owners of dwellings within 200 feet of the premises in which traffic in liquors is to be carried on to the issuance of a liquor tax certificate, the consent of the owner of the fee is sufficient, without that of a life tenant.

2. SAME—NUMBER OF CONSENTS REQUIRED.

Under Laws 1896, p. 60, c. 112, § 17, subd. 8, requiring the consent of the owners of at least two-thirds of the dwellings within 200 feet of the entrance to premises in which traffic in liquors is to be carried on to the issuance of a liquor tax certificate, where a double house had the

cellar divided by a lath and plaster partition, and the first and second floors were divided by a partition, through which there was a door between the hallways on each side on the first floor, nailed up at the time of the application for the certificate, and a husband owned one half and the wife the other half, the building could only be counted as one in determining the number of consents necessary.

**3. SAME—OPINION OF DEPARTMENT OF EXCISE—EFFECT.**

That a second deputy commissioner of excise advised that a double house should be counted as two dwellings in determining the number of consents necessary to the issuance of a liquor tax certificate, without having submitted the matter to the legal branch of the department of excise, does not estop the commissioner of excise from bringing a proceeding to revoke the certificate on the ground that a sufficient number of consents was not procured.

Application by Maynard N. Clement, state commissioner of excise, for an order revoking and canceling liquor tax certificate No. 22,756, issued to Elizabeth M. Dunbar. Granted.

Royal R. Scott, for petitioner.
Satterlee, Bissell, Taylor & French, for respondent.

CLARK, J. This proceeding is brought by the state commissioner of excise to revoke and cancel a liquor tax certificate issued by the treasurer of Wayne county to the respondent, Elizabeth M. Dunbar, authorizing her to traffic in liquors upon the premises known as "No. 14 East Union Street," in the village of Newark, Wayne county, N. Y. In her application Mrs. Dunbar, the respondent, stated that there were three dwelling houses, occupied exclusively as such, the nearest entrance of which was within 200 feet, measured in a straight line, from the premises where the traffic in liquors was intended to be carried on, and she attached to her application the consent of William J. Vanderpool and the consent of Amy E. Vanderpool, in the following language:

"William J. Vanderpool, owner of east half of dwelling, situate on towing path of Erie Canal.

"Amy E. Vanderpool, owner of west half of dwelling, situate on towing path of Erie Canal."

The evidence taken before the referee shows that this building, for which both Mr. and Mrs. Vanderpool gave consents, is what is commonly called a double house, and is the only building occupied as a dwelling within 200 feet of the respondent's saloon, excepting the dwelling house of Mr. Finley, who did not give his consent for the traffic in liquors at No. 14 East Union street, in Newark, N. Y. Mr. Finley's dwelling house is situate on the south side of East Union street, in Newark, and from 50 to 75 feet from the respondent's saloon, while the Vanderpool premises are situate across the Erie Canal from the rear of the saloon premises, and from 150 to 175 feet distant therefrom.

The commissioner of excise contends that there are only two buildings occupied exclusively as dwellings within 200 feet of this saloon, one of which is the Finley house and the other the Vanderpool premises, situate across the canal from the saloon. The respondent contends that these two buildings should be counted as three buildings; that is, that the Vanderpool house, being a so-called double house,

should be counted as two buildings, thereby making three buildings within the 200-foot limit, and, she having obtained the consents of Mr. and Mrs. Vanderpool, she had thereby complied with the terms of the statute, and it was not necessary for her to obtain the consent of Mr. Finley.

The evidence discloses the fact that this Vanderpool house in question is a large building, built upon a wall which has no solid mason-work partition through the center, and the only partition which there is in the cellar is an ordinary partition, constructed of 2x4-inch studding, lathed and plastered on one side, but merely lathed on the other, but that there is no opening in that partition.   There is practically no dispute in the evidence, and it would appear that this building was constructed as one building, with one wall around the outside, and with the siding put on connectedly, and with one complete roof, shingled straight through.   It also appears that, in dividing it so it could be used by two families, this partition was put through the cellar in the center of the building, and that on the first floor, on each side of the partition, there was a hall and stairway built, and in this partition was a doorway leading from one hall through to the other, or directly from one part to the other, but that the door was nailed up; and it further appeared, from the testimony of Mr. Vanderpool, that if the nails were removed from that door there was no reason that he knew of why the door could not be opened and that entrance used.   On the next floor above there was no opening in this partition, which was an ordinary lath and plaster partition, which extended on up to the roof, but not through it.   The evidence also shows that there was but one eaves trough and discharge pipe for the eaves, and but one barrel or cistern tank for the entire building.   To go from this Vanderpool house, which is situate close to the canal, to the saloon of the respondent, persons would have to pass down the towpath 300 or 400 feet to a bridge, then, crossing the bridge, would have to pass some distance to East Union street, and then back down about a similar distance on East Union street to the front of the saloon, so that for all practical purposes the Vanderpool property is quite remote from this saloon, although on a straight line across the canal would be within 200 feet.

The evidence further disclosed the fact that for some years the premises had been owned by Charles L. Youngs and Jennie E. Youngs, husband and wife, Mr. Youngs owning one half and Mrs. Youngs the other half, and that on the 7th day of August, 1906, the said Charles L. Youngs and Jennie E. Youngs, by deed, conveyed the whole of these premises to William Vanderpool, reserving forever to themselves the life use of said premises, and that on the 18th day of August, 1906, the very day that this respondent made her application for a liquor tax certificate, William Vanderpool conveyed to his wife, by deed, the west part or half of these premises, which Mr. Vanderpool said in his testimony were occupied, one half by himself and family, and the other half of the premises was occupied by a family whose name he could not give.

There are but two questions involved in this proceeding:   First, whether or not the premises known as the "Vanderpool premises" are to be counted as one or two buildings under Liquor Tax Law, Laws

1896, p. 45, c. 112; and second, whether or not the consent of the owner of the fee is sufficient, without the consent of the life tenant, it being conceded that the life tenants, Mr. and Mrs. Youngs, did not give their consents to the issuing of this liquor tax certificate until after the certificate had been issued, and until these proceedings to revoke it had actually been commenced.

The liquor tax law provides that when the nearest entrance to the premises described in an application for liquor tax certificate in which traffic in liquors is to be carried on is within 200 feet, measured in a straight line from the nearest entrance to a building or buildings occupied exclusively for a dwelling, there should also be filed simultaneously with said statement a consent, in writing, that such traffic in liquors be so carried on in said premises, executed by the owner or owners, or duly authorized agent or agents of such owner or owners, of at least two-thirds of the total number of such buildings within 200 feet, so occupied as dwellings, etc. Subdivision 8, § 17, Liquor Tax Law, Laws 1896, p. 60, c. 112.

So far as the second question is concerned, it seems to me that a conslusion can be reached without difficulty. When the liquor tax law says that the consents should be executed by the owner or owners of such buildings, or their agent, it means what it says, and we should not give the expression a strained or unnatural interpretation. Mr. and Mrs. Vanderpool held the legal title to these premises on the 18th day of August, 1906, when the application for this liquor tax certificate was made, and I do not believe it was necessary to obtain the consents of the life tenants. The owner of land is commonly understood to be the person who has the legal title thereto. Matter of Sherry, 25 Misc. Rep. 361, 55 N. Y. Supp. 421. It cannot be that the Legislature intended, by the use of the word "owner," to mean anybody excepting the person having the legal title. If it had been the legislative intent to have life tenants also sign consents, the statute would have plainly said so. The ordinarily accepted meaning of the word "owner" is the person having the legal title. Mr. and Mrs. Vanderpool had at that time the legal title to these premises, and, if this was the only question in the case, I would have no hesitancy in dismissing the proceedings.

But the other question, whether or not the Vanderpool premises are to be counted as one or two buildings, is more serious. It was clearly the aim of the liquor tax law, among other things, to restrain the traffic in liquors in residental districts, and in a measure protect dwelling houses from surroundings dangerous to good morals and tending to destroy the peace and quiet of the neighborhood, by requiring that the consents of the owners of at least two-thirds of the total number of buildings used exclusively as dwellings should be obtained and filed by every applicant for a liquor tax certificate. People ex rel. Sweeney v. Lammerts, 18 Misc. Rep. 343, 40 N. Y. Supp. 1107; Matter of Adriance, 59 App. Div. 440, 69 N. Y. Supp. 314; Matter of Patterson, 43 Misc. Rep. 498, 89 N. Y. Supp. 437. There can be no sort of question but that this building, as originally constructed, was not designed for two separate dwelling houses. But the real test is, what was its status at the time of the application for the liquor tax certificate? I

do not regard the question of how it had been owned and occupied in years gone by, whether by one individual or more, or whether occupied by one or more families, of so much importance in the disposition of this matter, as the question who owned it and how it was occupied at the time this liquor tax certificate was applied for and the consents in question given.

The evidence shows that from the 7th day of August, 1906, up to the 18th day of August, 1906, Mr. Vanderpool owned the entire property. It was deeded to him by Mr. and Mrs. Youngs in one conveyance, and there is nothing in the deed itself to indicate that two separate and distinct parcels of land were conveyed, or intended to be conveyed; but during that time Mr. Vanderpool owned the entire property, and on the 18th day of August, 1906, the respondent desired to apply for a liquor tax certificate, and consents were necessary. If the property was considered as one dwelling, the consent of Mr. Vanderpool would not be sufficient, as it is assumed that the owner of the other dwelling within the 200-foot limit, Mr. Finley, would not give his consent; so on that very day Mr. Vanderpool conveys to his wife the west part of the so-called Vanderpool premises, and then Mr. Vanderpool gives his consent as being the owner of the east part, and his wife gives her consent as the owner of the west part, of said premises, and Mr. Vanderpool received $600 from the respondent for giving such consent. There is more than a chance for a suspicion that the conveyance on that day, August 18th, being the very day the respondent applied for a liquor tax certificate, was made, not so much for the purpose of giving Mrs. Vanderpool title to the west half of the property, as it was to evade the requirements of the liquor tax law. This Vanderpool building had got to be considered as two dwellings, or the respondent would be without her liquor tax certificate, and the conveyance was made; but that fact alone would not make two dwelling houses out of one, and it is a little significant that Mr. Vanderpool, while testifying that he and his family occupied one part of the premises, was unable to give the name of the family which he said occupied the other part of the same building.

While the provisions of this section should not be construed harshly as against the holder of a liquor tax certificate, there is no reason why a common-sense interpretation should not be applied. It is true that in many cases in cities in a solid row of buildings the courts have held that, where there is a solid dividing wall from the bottom of the cellar to the roof, that would be a sufficient dividing line to make separate buildings; but it seems to me that that construction would hardly apply to a building like the one in question, in a village where it is not connected with any other buildings, and where it so plainly appears, from the photographs of the structure which were offered in evidence, that it was originally constructed as one building, on one continuing wall, with no solid wall of masonry dividing the cellar into two equal parts, and that wall extending from the cellar bottom to the roof. There was no solid division in this structure. The partition in the cellar was an ordinary lath partition, subsequently erected in the cellar, plastered on one side, and must necessarily have been a flimsy affair, while the

partition on the second floor had a door in it, nailed up, it is true, but a clean-cut opening, which could be used at any time as a passageway from one side of the house to the other, by merely drawing the nails that fastened the door, and it seems to me that this Vanderpool building can be considered as but one building, and occupied exclusively as a dwelling, and not two, as claimed by the respondent. Matter of Lyman, 26 Misc. Rep. 568, 57 N. Y. Supp. 488. The building in question was an entirety. It is a single structure, and I am convinced that it was so regarded by the Vanderpools, and the good faith of the transfer made by Mr. Vanderpool to his wife, the very day that the application for the liquor tax certificate was made, is very seriously questioned.

It is urged by the respondents that the opinion of the department of excise was obtained in this very matter before the liquor tax certificate was applied for, and that the second deputy commissioner had advised that the building in question should be counted as two dwellings under the provision of subdivision 8 of section 17 of the liquor tax law, and the letter from the second deputy commissioner to that effect was offered in evidence; but it also appears from the evidence that, while that was the opinion of the second deputy commissioner, it was clearly based on the assumption that the person who had asked for that opinion had fully stated the facts as to the building in question, and the circumstances surrounding the transfer from Mr. Vanderpool to his wife. But it appears that the legal branch of the department of excise was not consulted in the matter, and, while the letter of the second deputy commissioner may represent his opinion based upon the facts as he understood them, it is not binding upon the department, and does not estop the commissioner of excise from bringing this proceeding. Moreover, it may be assumed that, after receiving that letter from the second deputy·commissioner of excise, the respondent had reason to believe that the Vanderpool premises could be considered as two dwellings, and that, when she procured the consents of Mr. and Mrs. Vanderpool, she had complied with the law, and it should have due consideration when the question of costs is determined, but can affect this proceeding in no other way.

After a very careful examination of the evidence and the authorities submitted on both sides, I am satisfied that it was not necessary for the respondent to procure the consents of the life tenants, but that the Vanderpool premises cannot be considered as two separate dwellings, but that it was merely one building, used exclusively as a dwelling house, and that the respondent did not file and did not obtain the requisite consents, and that the statement in her application that she had done so was erroneous. The prayer of the petitioner must therefore be granted, and the certificate revoked; but, in view of the opinion of the second deputy commissioner of excise, in his letter which was in evidence, I think it should be without costs as against the respondent.

Let an order be entered accordingly.